UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| T.K., with and through her parents, G.K. and V.K., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION NO. |
| | )   17-cv-11781-DJC |
| TOWN OF BARNSTABLE, BARNSTABLE | ) |
| PUBLIC SCHOOLS, PATRICK CLARK and | ) |
| MEG MAYO-BROWN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM OF LAW IN**
**SUPPORT OF MOTION TO DISMISS**

Pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6), Defendants Town of Barnstable, Barnstable

Public Schools, Patrick Clark (Principal, Barnstable High School) and Meg Mayo-Brown

(Superintendent, Barnstable Public Schools) have moved, by motion filed herewith, to dismiss

the entire Complaint.  Alleging little more than legal conclusions and unsupported assertions,

along with claims that are simply not legally cognizable, Plaintiffs fall short of stating facts that

would support any viable claim for relief.

**I.      Standard of Review.**

Courts should dismiss complaint claims that fail to plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To

state a facially plausible claim, a complaint must recite facts sufficient at least to "raise a right to

relief above the speculative level...on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)."  Id. at 555.  See also Schatz v. Republican State Leadership

Comm., 669 F.3d 50, 55 (1st Cir. 2012) (complaint must "plausibly narrate a claim for relief").

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

of a cause of action will not do.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

Twombly, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'"  Id. (alteration in original) (quoting Twombly, 550

U.S. at 557).

On a motion to dismiss for failure to state a claim, the Court conducts a two-step,

context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).

First, the Court closely reads the complaint to distinguish the factual allegations (which are

accepted as true) from the conclusory allegations (which are not credited).  Id.  Second, the Court

determines whether the factual allegations present a "reasonable inference that the defendant is

liable for the misconduct alleged."  Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)

(quoting Iqbal, 556 U.S. at 678 (quotation mark omitted)).  The Court draws on its "judicial

experience and common sense" in determining whether a claim crosses Twombly's plausibility

threshold.  García-Catalán, 734 F.3d at 103 (citation omitted).

## II.    The Complaint.

Though repetitive, often contradictory and difficult to discern, Plaintiffs' main factual

allegations are as follows:[1]  On November 1, 2014, Plaintiff T.K. – then an 8th grader at

Barnstable High School ("BHS") – was raped by a 10th grade male student.  Complaint ¶¶ 13-

14.  The male student was "well-known to the Barnstable School District and has an extensive

juvenile criminal record" and "Barnstable's actions and non-actions to permit [the male student]

to attend the Barnstable High School as a known criminal, clearly endangered T.A. and other

students."[2]  Id. ¶¶ 19-20.

---

[1]Defendants vehemently deny most every substantive Complaint allegation.
[2]The Complaint repeatedly refers to T.K. as "T.A."  See, e.g., ¶¶ 13-31.

The male student "was also involved in the sale of drugs in the high school which he did induce T.A. to take and which did involve numerous intensive types of drugs."  ¶ 20.  Defendant Patrick Clark, BHS Principal, "was fully aware of the criminal behaviors of [the male student] and was personally responsible for his continued attendance" at BHS.  ¶ 24.

Due to the trauma, T.K. did <u>not</u> report the rape to school staff or her parents.  ¶ 16. During the rest of 8th grade, "[s]chool records and family reports…identified an observable shift in T.A.'s hyper focus on social interactions peer dynamics [sic] which began to severely impact her ability to progress academically."  ¶ 21.  "School records also show attendance and conduct issues…due to T.K.'s trauma, fear of the other students, and the perpetrator of the rape and how she was being perceived by school staff and students."  ¶ 22.  Principal Clark "became personally aware that T.A.'s peer group  and other students in the school began to reject her, call her names, and sexually proposition her…in person, via social media, and cell phone to T.A."  ¶ 26.

On some unidentified date, unidentified "Barnstable High staff discovered the rape"[3/] but "did nothing to provide proper or effective supports to T.A." (¶ 17) or "put in place any services to deal with the clear effects of T.A.'s  severe emotional injury even when requested by her treating psychologist and parents." ¶ 18.  "[H]owever, during the ninth grade year Barnstable did place T.A. in a day program for behavioral [sic] disturbed and academically impaired children in Plymouth, the Plymouth Area Collaborative."  ¶ 28.  The Plymouth Area Collaborative has no

---

[3/] Later, in their Title IX Count, Plaintiffs allege "[o]n or about November  2014 the Barnstable public schools and the town of Barnstable by and through its employees and agents new [sic] that T.K. was raped and assaulted in the Barnstable high school by [the male student]."  ¶ 42.  Not only is this allegation wholly conclusory and unsupported by fact – Plaintiffs fail to allege which Town/BPS employees knew, how they became aware, or when (presumably sometime in November) they became aware – it contradicts Plaintiffs' earlier allegation that T.K. did not report the rape.  ¶ 16.  The Court should therefore disregard ¶ 42.  See Iqbal, 556 U.S. at 678 (rejecting "naked assertions devoid of further factual enhancement" (internal punctuation and citation omitted)); Smith v. Brevard Cty., 461 F. Supp. 2d 1243, 1248 (M.D. Fla. 2006) ("the Court…need not accept internally inconsistent factual allegations") (citing Cash Inn of Dade, Inc. v. Metropolitan Dade Cty., 938 F.2d 1239, 1243 (11th Cir. 1991) and Campos v. I.N.S., 32 F.Supp.2d 1337, 1343 (S.D. Fla. 1998)).  In any event, even were ¶ 42 credited, Defendants' arguments for dismissal stand.

services or programs past 2:30 p.m. on Monday through Friday therefore [sic] there was no support or help available to T.A. and she did continue to spiral down emotionally." ¶ 28.  See also ¶ 32 ("Given Barnstable's refusal to provide the required 24 hour services that [sic] T.K. will be dumped, at her parent's home, hours before her parents can be home from work, Barnstable knowingly endangering [sic] T. K. as she will be left alone for some 5 hours daily….").

T.K.'s parents then filed an application for a Child Requiring Assistance court proceeding under M.G.L. c. 19, § 1 et seq.  ¶ 30.  Due to the severity of T.K.'s issues, the Juvenile Court placed her in a 90-day drug treatment center.  Id.  After T.K. completed the program, Barnstable refused to provide her "a residential therapeutic program due to her multi-level issues…."  ¶ 31.

All of the foregoing "caused not only the initial injury to T.K. but almost every day of every week since then the District's failure have [sic] injured T.K. and denied her access to FAPE pursuant to the IDEA, M.G.L. c. 71B, MGL 69s1, ABA, 29 USC 794, 603 CMR 49, MGL c. 71 s 370."  ¶ 34.

On September 17, 2017, Plaintiffs brought this suit, alleging nine Counts:[4/]

1)      Count I against the Town of Barnstable ("Town") and Barnstable Public Schools ("BPS") for a violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681;

2)      Count II against the Town and BPS for negligence;

3)      Count III against Principal Clark and Superintendent Mayo-Brown for negligence;

4)      Count IV against all Defendants for disability discrimination under Section 504 of Rehabilitation Act of 1973, 29 U.S.C. § 794;

5)      Count V against all Defendants for disability discrimination under the Americans With Disabilities Act, 42 U.S.C. § 12131 et seq.;

_____

[4/]The Complaint skips Count VII, making Counts VIII, IX and X the seventh, eighth and ninth counts, respectively.

6)      Count VI against all Defendants under 42 U.S.C. § 1983 for a violation of T.K.'s Fourteenth Amendment right to equal protection;

7)      Count VIII against all Defendants for intentional infliction of emotional distress;

8)      Count IX against all Defendants for negligent infliction of emotional distress; and

9)      Count X against all Defendants for negligence under M.G.L. c. 258, § 2.

For the following reasons, the Court should dismiss all of these claims and, therefore, the entire Complaint.

## III.     Argument.

### A.     Count I – Title IX Against The Town And BPS.

In Count I, Plaintiffs allege a Title IX violation against the Town and BPS[5] for failing to protect T.K. from student-on-student sexual harassment. See Complaint at ¶¶ 41-48. To be liable for such peer harassment under Title IX, BPS must have been deliberately indifferent to known acts of discrimination – in the form of sexual harassment – of which it had actual knowledge and which occurred under its control.[6] See Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 642 (1999). More specifically, Plaintiffs must show that: 1) T.K. was subject to "severe, pervasive, and objectively offensive" sexual harassment by a school peer; 2) the harassment deprived T.K. of educational opportunities or benefits; 3) BPS knew of the harassment; 4) the harassment took place in BPS's programs or activities; and 5) that BPS "was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." Porto v. Town of Tewksbury, 488 F.3d 67,

---

[5] Because Plaintiffs make no specific allegations whatsoever about the Town – all generalized references to Town "employees and agents" are plainly directed at BPS employees – the Town should be dismissed from this case. Regardless, the claims against the Town should be dismissed for the same substantive reasons as those against BPS. Given these realities, and for ease of reference, Defendants will hereinafter refer to the Town and BPS collectively as "BPS."

[6] Title IX provides in relevant part: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

72-73 (1st Cir. 2007).

Here, with respect to the alleged rape – the occurrence of which Plaintiffs apparently claim is a Title IX violation[7] (see Complaint ¶ 34) – Plaintiffs have not alleged any facts showing that BPS was on actual notice of sexual harassment to which it was deliberately indifferent that "effectively caused" the rape.  See Davis, 526 U.S. at 642-43 (holding federal fund recipients are liable for peer harassment under Title IX "only where their own deliberate indifference effectively 'caused' the discrimination") (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291 (1998)).  Rather, Plaintiffs allege only that the male student was "well-known to the Barnstable School District and has an extensive juvenile criminal record," that he "was also involved in the sale of drugs," and that Principal Clark "was fully aware of [his] criminal behaviors…and was personally responsible for his continued attendance" at BHS.  Complaint ¶¶ 19, 20, 24.

For "before" claims, "[c]ourts have generally described the substance of the 'actual knowledge' required to impose Title IX liability as knowledge of a substantial risk of abuse to students." Doe v. Bibb Cty. Sch. Dist., 83 F. Supp. 3d 1300, 1307 (M.D. Ga. 2015), aff'd, 688 F. App'x 791 (11th Cir. 2017) (collecting cases) (internal punctuation and citation omitted).  Here, Plaintiffs' generalized allegations about the male student's unspecified past "criminal behavior" and his alleged involvement with drugs are plainly insufficient to show that Principal Clark (or any other BPS official) was on actual notice that the male student engaged in past sexual misconduct such that he posed a substantial risk to sexually assault T.K.[8]

---

[7] Title IX cases involving allegations of a sexual assault often involve two types of claims: "before" claims, based on a school's actions before a plaintiff is assaulted and "after" claims, based on a school's actions after it is notified of the assault.  See, e.g., Doe v. Univ. of Tennessee, 186 F. Supp. 3d 788, 791-92 (M.D. Tenn. 2016).

[8] See, e.g., Porto, 488 F.3d at 75 ("Because continued sexual harassment was not a 'known or obvious consequence' of the school's inaction…[school district] cannot have been deliberately indifferent to" alleged sexual assault); Bibb Cty. Sch. Dist., 83 F.Supp.3d at 1309 (no actual notice even though school district "knew of two past instances of sexual harassment involving different students, different scenarios, and, in one case, different schools

For similar reasons, Plaintiffs' Title IX "before" claim fails because they have not sufficiently alleged facts meeting the deliberate indifference prong of a peer harassment claim. In failing to allege facts showing that BPS had actual notice of a substantial risk of sexual assault, Plaintiffs also fail to allege facts that could possibly show that BPS responded thereto with deliberate indifference. See, e.g., Doe ex rel. Pahssen v. Merrill Comm. Sch. Dist., 610 F.Supp.2d 789, 809 (E.D. Mich. 2009) (in assessing school district's Title IX liability for John Doe's rape of plaintiff, "the question is whether [the district] acted deliberately indifferent given the totality of its actual knowledge of John Doe [previously] sexually harassing Plaintiff and any other individuals.").

As for their "after" claim – that BPS, after "discovering" the rape, was deliberately indifferent to continuing sexual harassment of T.K. – Plaintiffs again fall short.  In alleging continuing harassment, Plaintiffs assert nothing more than conclusory labels and generalities, repeatedly claiming that T.K. was "assaulted," "bullied," harassed," "intimidated," "beaten," "humiliated," "embarrassed," and "rejected" by her peers.  See Complaint ¶¶ 26, 43, 47, 48.

But there are no facts that could possibly support these conclusions:  Plaintiffs offer no inkling of the who, what, where, when and why necessary to turn "naked assertions" into properly pled facts.  See Iqbal, 556 U.S. at 678.  Indeed, even before the more stringent pleading requirements of Twombly and Iqbal, the First Circuit required as much:  "In a civil rights action

---

within its system [and] *should have* anticipated the attack on" plaintiff) (emphasis in original); Carabello v. New York City Dep't of Educ., 928 F. Supp. 2d 627, 639 (E.D.N.Y. 2013) (DOE's knowledge of student's "past inappropriate and insubordinate behavior, although extensive, is not sufficiently similar to the harassment at issue in this litigation and, therefore, cannot have provided actual notice to DOE"); J.B. v. Mead Sch. Dist., 2010 WL 5173164, at *2, *5 (E.D. Wash. Dec. 10, 2010) (students' disciplinary history of defiance, cutting class, argumentative behavior, lack of cooperation, and use of profanity insufficient to put school on notice of significant risk that they might sexually abuse another student); Ross v. Corp. of Mercer Univ., 506 F. Supp. 2d 1325, 1347-48 (M.D. Ga. 2007) (college's knowledge of abuser's substance abuse history does not amount to actual knowledge that he might sexually assault another student).  Cf. Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1293 (11th Cir. 2007) (Title IX claim based on student-athlete's rape of fellow student sufficiently alleged where college had actual notice of athlete's extensive past sexual misconduct and nevertheless recruited and admitted him).

as in any other action subject to notice pleading standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why – although why, when why means the actor's state of mind, can be averred generally." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004).

Plaintiffs' pleading shortcomings are particularly egregious given Title IX's required showings of actual notice and deliberate indifference.  The Complaint leaves entirely unstated when and how Plaintiffs contend BPS became aware of the alleged rape (never mind the sexual harassment that allegedly came after), and what specifically Plaintiffs contend BPS failed to do (with deliberate indifference) to prevent such harassment.  Without at least these minimal factual allegations, Plaintiffs' Title IX claim fails.

**B.      State Law Tort Claims.**

Plaintiffs assert various state law tort claims.  These claims are governed by the Massachusetts Tort Claims Act, M.G.L. c. 258 et seq. ("MTCA"), which provides the exclusive remedy for torts by municipal employees.  c. 258, § 2.  The MTCA "serves as a limited waiver of sovereign immunity…." Doe v. Bradshaw, 2013 WL 5236110, *11 (D. Mass. Sept. 16, 2013).

**1.      Counts II, III  and X –  Negligence Against All Defendants.**

In Counts III, IV and X, Plaintiffs allege that Defendants breached their duty of care to protect T.K. from harm and are therefore liable for negligence.  The individual Defendants, Principal Clark and Superintendent Mayo-Brown, are "public employees" under the MTCA and are personally immune from negligence claims.  M.G.L. c. 258, § 2 (defining "public employees" as "officers or employees of any public employer" and providing that "no such public employee…shall be liable for any injury…caused by his negligent or wrongful act or omission while acting within the scope of his office or employment"). Cf. Pollard v.

Georgetown Sch. Dist., 132 F.Supp.3d. 208, 221 (D. Mass. 2015) (dismissing negligence claims

against individual school administrators "with prejudice because under Massachusetts law,

public employees like the individual Defendants are immune from negligence claims") (citing

Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003)).

As to the Town and BPS,[9/] the MTCA explicitly excludes from its limited waiver of

sovereign immunity claims "based on an act or failure to act to prevent or diminish the harmful

consequences of a condition or situation, including the violent or tortious conduct of a third

person, which is not originally caused by the public employer or any other person acting on

behalf of the public employer."  M.G.L. c. 258, § 10(j).  The Supreme Judicial Court has

"construed the 'original cause' language to mean an affirmative act (not a failure to act) by a

public employer that creates the 'condition or situation' that results in harm inflicted by a third

party."  Kent v. Commonwealth, 437 Mass. 312, 318 (2002) (citing Brum v. Dartmouth, 428

Mass. 684, 695 (1999).  Affirmative acts of a public employer are only the "original cause" of a

"condition or situation" if they "materially contributed to creating the specific 'condition or

situation' that resulted in the harm."  Id. at 319.  Unduly remote causes are not actionable.  Id.

As such, in the context of third party sexual harassment (and much like for Title IX

"before" claims), a public employer is the "original cause" of the harm under § 10(j) only where

the third party "had a criminal history or record of sexual assault, or that defendants were aware

of any other information that would put them on notice of poor character, specifically as relevant

to sexual abuse."  Bradshaw, 2013 WL 5236110, *12 (citing Armstrong v. Lamy, 938 F.Supp.

1018, 1046 (D. Mass. 1996).  See also Cormier v. City of Lynn, 91 Mass. App. Ct. 1101, 2017

---

[9/]The MTCA treats the Town and BPS together as the "public employer" and, as such, "[f]or purposes of
state tort liability, the Town and the School Committee rise and fall together."  Bradshaw, 2013 WL 5236110 at *12
(citing c. 258, §1 ("With respect to public employees of a school committee of a city or town, the public employer
for the purposes of this chapter shall be deemed to be said respective city or town.")).  Defendants will therefore
continue to refer to the Town and BPS collectively as "BPS."

WL 121065 at *3, <u>rev</u>. <u>granted</u>, 477 Mass. 1101 (2017) (affirming § 10(j) dismissal of negligence claim against city defendants based on fellow students' assault on plaintiff because complaint "did not allege any affirmative act by the defendants that 'contributed to creating the specific condition or situation that caused [plaintiff's] injuries.'…[Section 10(j)] provides immunity to a public employer for harmful consequences arising from its failure to act to prevent the conduct of a third person that resulted in the harmful consequence.").

Here, as shown, Plaintiffs allege no facts showing that BPS  was on notice that the male student was a substantial risk to sexually assault anyone.  As such, BPS was not the "original cause" of the harm to T.K. and § 10(j) bars the negligence claims against it.

Moreover, Plaintiff's negligence allegations are focused on BPS's alleged failure to "supervise" the male student and "protect" T.K.  <u>See</u>, <u>e.g.</u>, Complaint ¶¶ 51, 53, 56, 58.  Such allegations are necessarily based on BPS's "failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance."  <u>Armstrong</u>, 938 F.Supp. at 1044.  <u>Cf.</u> <u>Bradshaw</u>, 2013 WL 5236110, *13 (ruling § 10(j) precludes negligence claims because "most of the alleged failures to train or supervise or take corrective action…are failures mitigate harm."); <u>Canty v. Old Rochester Reg'l Sch. Dist.</u>, 54 F.Supp.2d 66, 71 (D. Mass. 1999) (holding § 10(j) bars plaintiffs' "attempts to hold the School District liable for its agents' negligent failure to 'prevent or diminish' the sexual misconduct of" coach).  As such, Plaintiffs' negligence claims (Counts II, III and X) should be dismissed.

### 2.      Counts VIII and IX – Intentional And Negligent Infliction of Emotional Distress Against All Defendants.

In Counts VIII and IX, Plaintiffs allege intentional and intentional infliction of emotional distress against all Defendants.  Once again, the MTCA governs.

As to Plaintiffs' claim for intentional infliction of emotional distress against the Town and BPS, the MTCA makes public employers immune from liability for all intentional torts. M.G.L. c. 258, § 10(c).  The Court should dismiss this claim with prejudice.  See Pollard, 132 F.Supp.3d. at 231.

With regard to the individual Defendants, to state a claim for intentional infliction of emotion distress, a plaintiff must show: 1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; 2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; 3) that the actions of the defendant were the cause of the plaintiff's distress; and 4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable person could be expected to endure it. Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976).  "The strength of a standard is always a matter of degree, but the Massachusetts cases are demanding."  Kennedy v. Town of Billerica, 617 F.3d 520, 530 (1st Cir. 2010).

Here, Plaintiffs have not alleged any individual actions affirmatively taken by Principal Clark or Superintendent Mayo-Brown or that such conduct was intended to cause or actually caused T.K. emotional distress.  Rather, Plaintiffs merely allege that the individual Defendants failed to act despite knowledge that sexual harassment was occurring.  See, e.g., Complaint ¶¶ 58, 62, 67, 85.

"…Massachusetts courts have found that this type of passive conduct is insufficient to state a claim" for intentional infliction of emotional distress.  Pollard, 132 F.Supp. at 233 (citing Maclellan v. Dahlheimer, 2012 WL 6971005, *3 (Mass.Super.Ct. Dec. 21, 2012) (school's failure to stop students' bullying of plaintiff was not sufficiently extreme and outrageous to state

claim); Parsons ex rel. Parsons v. Town of Tewksbury, 2010 WL 1544470, at **1, 4 (Mass.Super.Ct. Jan. 19, 2010) (school's failure to deter bullying and prevent violence, even though it "appeared to have mishandled and underestimated the seriousness of the situation…was not, as a matter of law, beyond all bounds of decency and utterly intolerable in a civilized community"); Bradshaw, 2013 WL 5236110, at *13 (school's failure to investigate complaints of coach's inappropriate sexual conduct with plaintiff, to remedy peer harassment and to provide plaintiff a free appropriate public education insufficient). Based solely on their alleged failure to act, Count VIII as against Principal Clark and Superintendent Mayo-Brown should be dismissed.

Count IX alleges negligent infliction of emotion distress against all Defendants. As a tort claim sounding in negligence, the analysis regarding Plaintiffs' previous negligence claims applies. See Bradshaw, 2013 WL 5236110 at *13 (holding plaintiff's negligent infliction of emotional distress "claim may proceed to the same extent as the claim for negligence"). As shown, the MTCA, c. 258, § 2, makes the individual Defendants personally immune from negligence claims. Count IX as against Principal Clark and Superintendent Mayo-Brown should therefore be dismissed.

As to BPS, to succeed on a claim for negligent infliction of emotional distress, Plaintiffs must demonstrate: "(1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case." Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). As described, Plaintiffs fail to meet the first element – a showing of negligence – because they fail to allege facts demonstrating that BPS was the original cause of the situation that resulted in harm to T.K. Section 10(j) therefore shields BPS from liability.

Moreover, other than a wholly conclusory recitation of the claim's fourth element (see Complaint ¶ 81 (Plaintiffs "did suffer severe emotional distress is [sic] evidenced by their behavior, complaints and objective symptomology")), Plaintiffs have failed to plead any facts that could possibly show that Plaintiffs suffered "physical harm manifested by objective symptomatology."  See Bradshaw, 2013 WL 5236110 at *13 (dismissing claim for failure to allege physical harm manifested by objective symptomatology).  For these reasons, Count IX as against the Town and BPS should be dismissed.

## C.    Count VI – § 1983 Against All Defendants.

"Section 1983 provides a private right of action against state actors – that is, public officials acting under color of state law – who deprive individuals of rights confirmed by federal constitutional or statutory law."[10/]  Camilo-Robles v. Zapata, 175 F.3d 41, 43 (1st Cir. 1999). Count VI, via § 1983, alleges that Defendants violated the Fourteenth Amendment by subjecting "T.K. to unwelcome and offensive sexual advances, intimidation's [sic], assaults, [sic] harassment" based on her gender.  Complaint ¶¶ 72-73.  The Fourteenth Amendment's Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group."[11/]  Mulero-Carrillo v. Roman-Hernandez, 790 F.3d 99, 105-06 (1st Cir. 2015).

To survive a motion to dismiss, a plaintiff "must allege facts plausibly demonstrating that compared with others similarly situated," the plaintiff was "selectively treated...based on impermissible considerations" such as sex.  Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg.

---

[10/]In relevant part, 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

[11/]The Equal Protection Clause commands that "no state shall...deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV, § 1.

Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)) (internal quotation marks omitted).  The standard for determining whether individuals are similarly situated "is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated."  Id.

Here, Plaintiffs make a single, cursory (not to mention unintelligible) allegation about comparators:   "But for her trying to the plaintiff [sic] would not have been subjected to such disparate sexually offensive treatment as compared to male students."  Complaint ¶ 74.  Of course, this bald allegation provides no facts that would establish that there were male students who were similarly situated to T.K., that T.K. was treated differently, and that any differential treatment was based on T.K.'s sex.  See, e.g., Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (dismissing equal protection claim where plaintiffs alleged in conclusory fashion that similarly-situated persons were treated differently, but failed to allege specific examples of treatment of similarly situated persons); Schofield v. Clarke, 769 F.Supp.2d 42, 48 (D. Mass. 2011) (dismissing equal protection claim where the plaintiff "fail[ed] to set forth any facts showing that he was treated differently from others who were similarly situated").

Furthermore, as to the Town and BPS, it is well established that a local government entity may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 736-37 (1989); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Rather, a government entity may only be held liable under § 1983 where the injury is the result of an official discriminatory "policy" (a decision of an official who possesses final authority to establish municipal policy with respect to the action ordered) or "custom" (a practice, although not formally approved by an appropriate decision maker, so

widespread as to have the force of law).  Monell, 436 U.S. at 694; Silva v. Worden, 130 F.3d 26, 31 (1st Cir. 1997).

Here, Plaintiffs altogether fail to allege facts that show T.K. suffered any differential treatment by virtue of an official BPS custom or policy.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations [and the] factual allegations must be sufficient to support necessary legal conclusions."  Ruston, 610 F.3d at 59.

Finally, the § 1983 claims as against the individual Defendants should be dismissed because the Complaint is devoid of any allegation that they (and Superintendent Mayo-Brown in particular[12]) personally took any affirmative action or played any personal role in the allegedly unconstitutional acts.  Section 1983 does not impose liability absent individual involvement in the allegedly illegal conduct.  See Jones v. Horne, 634 F.3d 588, 602 (D.C. Cir. 2011).  Accordingly, Count VI should be dismissed.

### D.  Counts IV and V – Disability Discrimination Against All Defendants.

In Counts IV and V, Plaintiffs allege discrimination against all Defendants under Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq. ("§ 504") and the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), both of which prohibit discrimination against a disabled person on the basis of his or her disability.[13]  See Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  Given their similarities, § 504 and ADA claims are subject to the same analysis.  Id.  To establish a prima facie case, a plaintiff must show that: 1) she is a qualified individual with a disability; 2) she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise

---

[12]Superintendent Mayo-Brown was not yet BPS Superintendent at times applicable to the Complaint allegations.
[13]Section 504 applies to recipients of federal funding, see 29 U.S.C. § 794(a) and Title II of the ADA applies to state and local governments, see 42 U.S.C. § 12132.  Calero-Cerezo, 355 F.3d at 19.

discriminated against; and 3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.[14]   Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (2000).

Here, Plaintiffs allege that T.K. "was a handicapped person due to the emotional trauma and distress [caused by the alleged sexual assault] and was qualified to complete her education requirements and participate in high school with reasonable accommodations and supports." Complaint ¶¶ 61 (§ 504), 66 (ADA).   In denying T.K. these unidentified "reasonable accommodations and supports," BPS "denied her access to FAPE pursuant to the IDEA, M.G.L. c. 71B, MGL 69s1, ABA, 29 USC 794, 603 CMR 49, MGL c. 71 s 370." ¶ 34.

Pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-91, states receiving federal funding must provide all disabled children in their jurisdiction with a free appropriate public education ("FAPE"). D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012).   The IDEA "imposes extensive procedural requirements on participating state and local agencies to safeguard a disabled student's right to a free public education." Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993) (citing 20 U.S.C. § 1401(a)(20)).

Although the IDEA requires impartial due process hearings, Congress left the details of those proceedings to the states. In response, Massachusetts has adopted a panoply of statutes and regulations. Under the state scheme, a parent may request a hearing by the Bureau of Special Education Appeals ("BSEA") regarding the evaluation of, and the appropriate educational program for, a child with a disability. See M.G.L. c. 71B, § 3; 603 M.C.R. § 28.08(3).

Under the IDEA, schools give parents an opportunity to file complaints regarding any matter relating to the provisions of FAPE to a disabled child. See 20 U.S.C. § 1415(b)(6)(2000).

_____

[14]Section 504 contains the additional requirement that "the plaintiff show the program or activity from which she is excluded received federal financial assistance." Rivera-Flores v. Puerto Rico Tel. Co., 64 F.3d 742 (1st Cir. 1995).

Parents who file a complaint are entitled to a due process hearing under the authority of the state or local educational authority.  <u>See</u> 20 U.S.C. § 1415(f)(3).  Only after pursuing available avenues of appeal at the state level, may parents turn to the federal courts for relief.  <u>See</u> 20 U.S.C. § 1415(i)(2)(A).

The IDEA states:

> "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the American with Disabilities Act, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, <u>except that before the filing of a civil action under such law seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter</u>."

20 U.S.C. § 1415(l) (emphasis added).

Section 1415(l) thus requires a plaintiff to exhaust state administrative remedies whenever that plaintiff seeks relief that is available under the IDEA, even if the complaint pleads a cause of action wholly based on a different statute.  <u>See</u> <u>Rose v. Yeaw</u>, 214 F.3d 206, 210 (1st Cir. 2000) ("Before filing suit, however, IDEA mandates that plaintiffs exhaust administrative remedies through the due process hearing.  This requirement applies even when the suit is brought pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA.").  "The exhaustion requirement applies to actions brought under the IDEA, the ADA, § 504, or any § 1983 claim based upon violations of a student's IDEA rights." <u>CBDE Public Schools v. Massachusetts BSEA</u>, 2012 WL 4482296 at *6 (D. Mass. Sept. 27, 2012) (citing <u>Weber v. Cranston Sch. Comm.</u>, 212 F.3d 41, 51-52 (1st Cir.2000); <u>Rose</u>, 214 F.3d at 206; <u>Bowden v. Dever</u>, 2002 WL 472293, at *4-5 & n. 6 (D. Mass. Mar. 20, 2002)).  "[S]o long as claims are in some way based on the denial of FAPE, exhaustion is mandatory."  <u>CBDE Public Schools</u>, 2012 WL 4482296 at *6.

Here, Plaintiffs' § 504 and ADA claims, both plainly "in some way based on the denial of FAPE" (see Complaint ¶ 34), should be dismissed for failure to exhaust administrative remedies. As summarized by one court:

> [E]xhaustion is required in cases where a plaintiff is seeking to enforce rights that arise as a result of a denial of a free appropriate public education, whether pled as an IDEA claim or any other claim that relies on the denial of a FAPE to provide the basis for the cause of action (for instance, a claim for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, premised on a denial of a FAPE).

Payne v. Peninsula Sch. Dist., 653 F.3d. 863, 875 (9th Cir. 2011).  Because Plaintiffs failed to exhaust the IDEA-based remedies, Counts IV and V should be dismissed.

Regardless of exhaustion, Plaintiffs' disability claims should be dismissed for an independent reason.  Whether a claim is based on the denial of FAPE or some other non-FAPE related "reasonable accommodation," Section 504 and the ADA both require a "showing that the denial resulted from a disability-based animus."  D.B. ex rel. Elizabeth B., 675 F.3d at 40.

Here, Plaintiffs allege no facts suggesting that Defendants denied T.K.'s requested "accommodations and supports" because of disability-based animus.  See Thomas v. Springfield Sch. Comm., 59 F. Supp. 3d 294, 307 (D. Mass. 2014) (holding that although plaintiffs sufficiently alleged a denial of FAPE, they failed to show that the denial resulted from disability-based animus as required under the ADA) (citing D.B. ex rel. Elizabeth B., 675 F.3d at 40).  Thus, even had Plaintiffs alleged that BPS denied T.K. some identified non-FAPE-related reasonable accommodation, their disability discrimination claims still fail.  Counts IV and V should therefore be dismissed.

## IV.    Conclusion.

For all of the foregoing reasons, the Defendants respectfully request that this Honorable Court dismiss all counts of Plaintiffs' Complaint.

Respectfully submitted,

TOWN OF BARNSTABLE, BARNSTABLE PUBLIC
SCHOOLS, PATRICK CLARKE and MEG MAYO-
BROWN,

By their attorneys,


/s/John M. Simon
John M. Simon (BBO #645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated:  February 6, 2018


<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-
registered participants on February 6, 2018.


/s/John M. Simon
John M. Simon