UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL ACTION #17-cv-11781-DJC

---

T. K. with and through her parents
G.K and V.K

V.

Town of Barnstable, Barnstable Public Schools,
Patrick Clark, Principal of the Barnstable
High School, personally and in his
Official Capacity, Superintendent
Meg Mayo-Brown, Personally, and
in her Official Capacity

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

The plaintiffs G.K., V.K., on behalf of their minor child T.K. (collectively "Plaintiffs) oppose the Town of Barnstable, ("Town"), Barnstable Public Schools, ("BPS's"), Superintendent Meg Mayo-Brown and Principal Patrick Clark's ("Clark") (collectively defendants) Motion to Dismiss Plaintiffs' Complaint. Defendants' motion fails because plaintiffs have pled sufficient facts as to all counts in their complaint. Accordingly, Defendants' motion to dismiss should be denied.

**INTRODUCTION**

In this case, the plaintiffs' claims arise within the context of sexual and physical assaults perpetrated by a male student in the high school, Falvio Desantos, ('Falvio") which assaults did span plaintiff's (T.K.) eighth grade year in the Barnstable High School. The defendants, including the school principal and superintendent, had knowledge of these assaults yet they've

1

failed to properly supervise Flavio ignoring his history and prior assaults and criminal charges existing in the juvenile court system at the time of the assaults upon TK. As a result of this action and non-action by Flavio upon TK and the action and non-action of the Barnstable school district and school staff TK and her parents suffered serious physical and emotional injuries as articulated in the complaint.

**ARGUMENT**

    I.    **Motion to Dismiss Standard**

In order to survive a motion to dismiss under Rule 12(b)(6), and a Plaintiff must "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is considered plausible on its face when the Plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In making its assessment, the court must accept all the allegations within the complaint as true, and determine if the "factual allegations [are] enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). While deciding a Rule 12(b)(6) motion, the court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Corp., 496 F. 3d 1, 5 (1st Cir. 2007). Dismissal is only appropriate where the plaintiffs well-plead facts do not "possess enough heft to show that the plaintiff is entitled to relief." Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008). The court must rely on its "judicial experience and common sense" in determining whether a claim crosses the plausibility threshold.

Garcia-Catalan v. United States, 734 F.3d 100 at 103 (1st Cir. 2013). This is a context-specific inquiry and does not demand a high degree of specificity. See id.

Any materials outside the four corners of the complaint are excluded when deciding a motion to dismiss; only the facts set forth in the complaint are considered. Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). Thus, this Court must disregard the Defendants attempts to set forth unsubstantiated facts, including the apparent steps that the school took to prevent and respond to the abuse of T.K. To the extent that the Defendants argue that the Plaintiffs have not, and cannot, establish that they are liable in light of otherwise sufficiently alleged claims, such an argument is premature, let alone baseless, at this time.[2] Brum v. Dartmouth, 44 Mass. App. Ct. 318, 322 (1998) ("The court is not to consider the unlikelihood of the plaintiff's ability to produce evidence to support otherwise legally sufficient complaint allegations, however improbable appear the facts alleged"). Instead, the Court must accept Plaintiffs' allegations as true, as well as any reasonable inferences to be drawn in their favor, and disregard any facts and/or evidence extrinsic to the Complaint. Trans-Spec Truck Serv., 524 F.3d at 321; Luar Music Corp. v. Universal Music Group, Inc., 847 F. Supp. 2d 299, 308 n.13 (D.P.R. 2012).

**II. The Complaint Should not be Dismissed Because It Adequately States Claims Upon Which Relief Can Be Granted.**

   **A. Plaintiffs have pled sufficient facts to establish a violation of Title IX**

A required element of a Title IX claim is for a defendant to have knowledge of harassment or an assault. Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 629 (1999). Here, Defendants' actual knowledge of the assaults can be reasonably inferred because of the

context of the attacks. These attacks happened in the Barnstable High School and targeted one of the youngest and most vulnerable students. See Complaint at **¶16-22.** The student was under close supervision by teachers, and it is reasonable to assume reports of the abuse were disseminated up the administration chain. Defendants do not contest this fact and acknowledge that they knew about the assaults.

      The court may look to a case which, on its face, seems similar to this one. In that case, Santiago v. Puerto Rico, a Title IX claim was brought against a school board regarding a sexual assault on a minor student by a bus driver. Santiago v. Puerto Rico, 655 F.3d 61, 66 (1st Cir. 2011). In Santiago, the First Circuit Court of Appeals dismissed a Title IX claim on a Fed. R. Civ. P. 12(b)(6) motion because it was not plausibly alleged that the principal of the school knew of the alleged assaults against the bus driver. Id. at 74-75. Santiago, however, is distinguishable in two material respects. First, in Santiago, it was never alleged that the principal had actual knowledge, only that attempts to notify the principal were futile; in fact, the complaint expressly acknowledged that the teacher who received the parent's report of abuse did not notify the principal about the assault. Id. at 74. Second, the assaults in Santiago were committed by a bus driver who was an independent contractor, not a municipal employee, making it less reasonably inferable that abuse was reported through the proper channels. See id. at 66. In this instant case, it is reasonable to assume that these assaults were reported up the chain to the Defendants. The 8th grade students were closely monitored by teachers at high school. These teachers quickly came to know about the allegations, and it is reasonably assumed the abuse allegations were reported up the administration chain to Defendants. In fact, in the Motion, Defendants concede that they had knowledge of the assaults.   Defendants only argue about the appropriateness of its response. Any evaluation of liability is premature at this early stage. Thus, Plaintiffs have pleaded sufficient facts to allege a violation of Title IX.

**B.      Response to Defendants argument to dismiss Counts II, III, and X Massachusetts State Tort Claims**

Defendants argue that counts II, III, and X should be dismissed as they are covered by and protected by the Massachusetts tort claims act which the defendant does claim the parties are excluded from claims against municipal employees and the statute serves as a waiver of sovereign immunity which is clearly not true given the circumstances of this case. Although a State's failure to protect an individual against private violence does not ordinarily constitute a violation, the due process clause is nevertheless implicated where the state and its employees did play a role in creating the danger or...enhanced the danger to an individual. See Morgan v. Town of Lexington, 138 F. Supp. 3d 82, 89 (D. Mass. 2015). In these so-called "stated-created danger" cases, a school district has "a specific duty to protect a student in situations where inaction and failure to protect the student would be truly outrageous, uncivilized, and intolerable under the circumstances." Id. at 89-90.

Here, the Plaintiffs have adequately pled that the defendants caused a state-created danger by failing to protect T.K. from their sexually abusive peer. Taking the allegations in the Complaint as true, the minor student, "Falivio", sexually and physically assaulted T.K. at the school on numerous occasions. See Complaint ¶19-26. Notwithstanding knowledge of "Flalivio's" history and his prior sexual and physical assaults, the school staff, including Principal Clark, failed to supervise and oversee "Falivio", resulting in continued sexual and physical assaults. See Complaint . Given the pattern of serious abuse, the school acted in conscious disregard of the vulnerable 8th grade child T.K. in its charge, who, by reason of her age and circumstance, was incapable of protecting herself from abuse and further abuse. T.K. had no choice but to rely on the adults to whom her care was entrusted, and accordingly, she endured abuse of the worst kind in a place where she was supposed learn, grow, and be safe. The defendants both individually and jointly were not faced with an emergency situations requiring a single, decisive action, but rather they perpetually chose to ignore the ongoing and

continuous danger to students, resulting in behavior sufficient to shock the conscience. See, e.g., Doe v. Town of Wayland, 179 F. Supp. 3d 155, (D. Mass. Apr. 13 2016) (reasoning, within the context of a state-created danger claim under section 1983, that "whether behavior is conscience shocking varies with regard to the circumstances of the case. In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience").

In light of the ages of the students involved and the nature of the assaults, "the circumstances at issue in this action create a reasonable expectation that discovery may yield evidence of the [defendants'] allegedly tortious conduct[,]" and, therefore, the Plaintiffs have pled sufficient facts to "provide fair notice to the defendants and state a facially plausible legal claim." Garcia-Catalan v. United States, 734 F. 3d 100, 103 (1st Cir. 2013) (motion to dismiss denied) (internal quotations and citations omitted). Moreover, the defendants are not entitled to qualified immunity in light of the specific context of this case. "The doctrine of qualified immunity shield officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Stamps v. Town of Framingham, 813 F.3d 27, 33 (1st Cir. 2016). Plaintiffs allege that the defendants knew of "Falvios" prior harassment and abuse and chose not to stop the harassment and abuse, despite its ability to do so. Dismissal of this portion of the claim would be premature. Defendants did not responded promptly to the report of sexual abuse against T.K. The facts regarding earlier reports of sexual misconduct, and defendants' non response to those reports, are as yet undeveloped. Determining whether the Town acted with deliberate indifference toward T.K. rights is again contingent on that factual development. The ongoing conduct of the defendants both jointly and individually, specifically particular conduct—ignoring "Falvio's" prior history and the sexual abuses that had been occurring at his school, resulting in further abuse—violated T.K.'s established rights

to her bodily integrity is beyond debate.

The Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258 2, provides the exclusive remedy for torts by municipal employees. It provides, in relevant part, that:

> Public employers shall be liable for injury . . .
> caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like
> circumstances . . . . The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or, the public employee or his
> estate whose negligent or wrongful act or omission gave rise to such claim, and no such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . . .

The Act serves as a limited waiver of sovereign immunity, but the Town invokes Mass. Gen. Laws ch. 258, §§ 10(c) & (j), which exclude certain claims from this waiver. Section 10(c) preserves a public employer's sovereign immunity for claims arising out of intentional torts. *Id. §* 10(c). Section 10(j) preserves immunity for claims "based on an act or failure to act to prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer." *Id.* 10(j).  For purposes of state tort liability, the Town and the School Committee rise and fall together. Under Mass. Gen. Laws ch. 258, § 1, "public employer" means "the commonwealth and any county, city, town, educational collaborative, or district . . and any department, office, commission, committee, council, board, division, bureau, institution, agency, or authority thereof." Mass. Gen. Laws ch. 258 § 1. Furthermore, "[w]ith respect to public employees of a school committee or a city or town, the public employer for the purposes of this chapter shall be deemed to be said respective city or town." *Id.*

The Defendant, Barnstable, claims that it is immune from suit under sections 10(c) and 10(j). Under section 10(c), as noted above, the Town is immune from suit for claims arising out of the intentional torts of its employees. Mass. Gen. Laws ch. 258 § 10(c).

However, it may read as an independent claim for negligence supervision and to investigate. As the Massachusetts Supreme Judicial Court has noted, this presents a distinct negligence claim that is not barred by section 10(c). *Doe v. Town of Blandford,* 525 N.E.2d 403, 408 (Mass. 1988); see *also Chaabouni v. City of Boston,* 133 F. Supp. 2d 93, 96-98 (D. Mass. 2001) (rejecting motion to dismiss claiming section 10(c) immunized city where complaint alleged negligence in the failure to train officers who assaulted and battered plaintiff). Section 10(c) does not offer the Town the immunity it seeks.

The Town, however, is shielded to some extent by 10(j). As noted above, that section bars claims based on a failure to act to diminish the harm caused by a situation, as long as that situation "is not originally caused by the public employer or any other person acting on behalf of the public employer." Mass. Gen. Laws ch. 258 § 10(j); *Brum v. Dartmouth,* 704 N.E.2d 1147, 1155 (Mass. 1999) (concluding that the "originally caused" language refers to the "condition or situation").

The Supreme Judicial Court has "construed the 'original cause' language to mean an affirmative act (not a failure to act) by a public employer that creates the 'condition or situation' that results in harm inflicted by a third party." *Kent v. Commonwealth,* 771 N.E.2d 770, 775 (Mass. 2002) (citing *Brum,* 704 N.E.2d at 1154-55). Affirmative acts of a public employer are only the "original cause" of a "condition or situation" if they "materially contributed to creating the specific 'condition or situation' that resulted in the harm." *Id.* at 775-76.

The Town might be called the "original cause" of the "condition or situation" that resulted in harmful consequences to T.K. given that it hired did keep Falvio in the high school given his past criminal behavior and criminal charges. Unduly remote causes, however, are not actionable. *Kent,* 771 N.E.2d at 775-76.

Plaintiffs do allege that Falvio had a criminal record or history of sexual assault, or that defendants were aware of any other information that would put them on notice of poor character, specifically as relevant to sexual abuse. *See Armstrong v. Lamy,* 938 F. Supp. 1018, 1046 (D. Mass. 1996) ("A claim for negligent hiring requires evidence that the employer failed to exercise due care in the selection of an employee, evidence that the employer knew or should have known that the employee who was hired was unfit and posed a danger to others who would come into contact with the employee during the employment, and evidence that the employer's failure proximately caused the injury of which the plaintiff complains."). From there, most of the alleged failure to take corrective action, are failures to mitigate harm. *See Armstrong,* 938 F.Supp at 1044 (allegation that "city employees failed to 'protect' [plaintiff], and failed to `train,' supervise,"regulate,"control,' or 'correct' [defendant teacher]" were "based on the failure to prevent or mitigate a harm, rather than participation in the initial injury-causing circumstance"). The decision to keep Falvio in school given his known criminal history following the earlier reports of misconduct is an affirmative act not shielded by 10(j). *Cf. Pettengill v. Curtis,* 584 F. Supp. 2d  theory of breach, then, the negligence claim may proceed.

Also public employees may only be liable under the Massachusetts Tort Claims Act if they acted outside of the scope of their employment. Mass. Gen. Laws ch. 258 § 2 ("no public employee or the estate of such public employee shall be liable for any injury

caused by his negligent or wrongful act or omission while acting within the scope of his office or employment."). The complaint clearly alleges that the employee-defendants were acting within the scope of their authority as employees throughout the relevant period therefore the claims must not be dismissed as to the individual employee-defendants. Clearly, the Plaintiffs pled sufficient facts to establish a violation of the Massachusetts Tort Claim laws against defendants in their individual and joint capacity, and his Motion to Dismiss with respect to Count II, III, and X should be denied. See <u>Doe v. Town of Wayland,</u> 179 F. Supp. 3d at 169 (holding that the plaintiff adequately pled a claims where the school encouraged a friendship between two children, one who was a known sexual abuser of children).

**C.**     **Response to Defendants argument to dismiss Counts VIII, and IX Intentional and Negligent Infliction of Emotional Distress Against All defendants**

Defendants argue again that counts VIII and IX should be dismissed as they are covered by and protected by the Massachusetts tort claims act and immune from liability for all intentional torts pursuant to M.G.L. c. 258 section 10(c) which the defendant does claim the parties are excluded as the statute serves as a waiver of sovereign immunity which is clearly not true given the circumstances of this case. Although a State's failure to protect an individual against private violence does not ordinarily constitute a violation, the due process clause is nevertheless implicated where the state and its employees did play a role in creating the danger or...enhanced the danger to an individual. See <u>Morgan v. Town of Lexington,</u> 138 F. Supp. 3d 82, 89 (D. Mass. 2015). In these so-called "stated-created danger" cases, a school district has "a specific duty to protect a student in situations where inaction and failure to protect the student would be truly outrageous, uncivilized, and intolerable under the circumstances." Id. at 89-90. Plaintiffs complaint clearly shows that T.K. (1) was subject to "severe, pervasive, and

objectively offensive" sexual harassment by a school peer, (2) the harassment deprived T.K of educational opportunities or benefits, (3) the Town knew of the harassment, (4) the harassment took place in the Town's programs or activities, and (5) that the Town "was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." *Porto v. Town of Tewksbury,* 488 F.3d 67, 72-73 (1st Cir. 2007). Plaintiffs may pursue the breach as to all defendants based on the Town's decision to continue the continued attendance of Falvio following the serious prior criminal acts and reports of misconduct; the claim against the individual defendants.

Also The conduct alleged against this sweet 8th grade girl clearly amounts to "extreme and outrageous" conduct as necessary for liability. *Agis v. Howard Johnson Co.,* 355 N.E.2d 315, 318 (Mass. 1976). There was clear "malice," as well which together is sufficient to sustain a claim for intentional infliction of emotional distress. *See Tetrault v. Mahoney, Hawkes & Goldings,* 681 N.E.2d 1189, 1197 (Mass. 1997). Plaintiffs' claims clearly demonstrate "deliberate indifference" and "intentional discrimination" as necessary to succeed on many of their claims and, and as pled clearly go "beyond all possible bounds of decency" or "utterly intolerable in a civilized society." *Agis,* 355 N.E.2d at 319.

**D.    Response to Defendants argument to dismiss Counts VI –Section 1983 as to all Defendants**

In the face of overwhelming evidence that Falvio Desantos was a sexual predator, and the Defendants allowed, Falvio Desantos in the Barnstable High School which led to the sexual assault upon T.K.. The Defendants are not entitled to qualified immunity because they did not act reasonably under settled law in the circumstances. See Hunter v. Bryant, 502 U.S. 224, 228 (1991). In any event, the pleadings properly preclude resolution of this defense on a motion to

11

dismiss. Where a qualified immunity defense is advanced by pretrial motion, normal pre-trial standards control. See Amsden v. Moran, 904 F.2d 748, 752 (1st Cir. 1990) (pertaining to a motion for summary judgment). Therefore, the Court cannot dismiss Plaintiffs claims against the Defendants, as the Complaint clearly and specifically alleges claims upon which relief can be granted pursuant to 42 U.S.C. § 1983. See id.

Qualified immunity is available to defendants who have "acted reasonably under settled law in the circumstances." Hunter, 502 U.S. at 228. The First Circuit has identified two prongs to the qualified immunity analysis. Hegarty v. Somerset Cnty., 53 F.3d 1367, 1373 (1st Cir. 1995), quoting Burns v. Loranger, 907 F.2d 233, 235-36 (1st Cir. 1990). First, the Court must determine whether the right asserted by the Plaintiff was "clearly established" at the time of the alleged violation. St. Hilaire v. City of Laconia, 71 F.3d 20, 24 (1st Cir. 1994). Second, the Court must ask whether "a reasonable official situated in the same circumstances should have understood that the challenged conduct violated that established right." Id., citing Hegarty, 53 F.3d at 235-36; Burns, 907 F.2d at 236.

Plaintiff has alleged violations of T.K. rights to bodily integrity and to physical safety level while in the custody or responsibility of the Defendants. Both rights are "clearly established." The right to be free from intrusions into one's bodily integrity was clearly established by 1977 in Ingraham v. Wright, 430 U.S. 651, 673 (1977), in which the Supreme Court declared that "among the historic liberties" protected by the Due Process Clause is the right against "unjustified intrusions on personal security" at the hands of the state. See also, Youngberg v. Romeo, 457 U.S. 307 (1982); Wood v. Ostrander, 879 F.2d 583, 589 (9th Cir. 1989) cert. denied, 498 U.S. 938 (1990) (describing Ingraham as holding that students have "[a] liberty interest in personal security and freedom from restraint and infliction of pain"). The

right to safety was clearly established in 1982, when the Supreme Court held that officials must take basic steps to prevent children "wholly dependent on the State" from harm. Youngberg, 457 U.S. at 317. The First Circuit recently confirmed the longstanding existence of such a right. Connor B. v. Patrick, No. 10-30073-WGY, 2013 U.S. Dist. LEXIS 166348, at *7980 (1st Cir. Nov. 22, 2013). Thus, the Plaintiff has alleged sufficient facts to satisfy the first prong of the qualified immunity analysis.

 Regarding the reasonableness inquiry under the second prong of the qualified immunity analysis, School Staff, employees and administrators do not act reasonably when they present information to the court that is known to be false. See Snell v. Tunnell, 920 F.2d 673, 698 (10th Cir. 1990) (denying qualified immunity to social workers who presented false information to the court). The Defendants do not claim that school staff and the Barnstable Public Schools acted reasonably under the circumstances. Despite the overwhelming evidence that qualified immunity is inappropriate, the Defendants attempt to distance themselves (and their liability) from the injuries that T.K. suffered by relying on two facts: first, that none of the individual Defendants are alleged to have no knowledge of the sexual assaults and intimidations and control of T.K. by Falvio Desantos

 As a preliminary matter, it is important to note that Falvio Desantos sexual assault is not the only violation for which the Plaintiff seeks to hold the Defendants liable. In addition, Plaintiff alleges several violations that the Defendants perpetrated directly, while T.K. was in the Barnstable School System. Falvio Desantos sexual assaults upon T.K. during the her 8th grade year, September 2014 to June 2015 would not have occurred but for the Defendants' non actions while Falvio Desantos was in Barnstable High School during the 2014-2015 school year and was indeed the culmination of their intentional and neglectful conduct with respect to T.K.s safety and bodily integrity while she was in Barnstable High School.

Regarding Falvio Desantos assault, there are two ways in which public entities becomes liable to protect citizens from harm caused by private parties: (1) the "special relationship" theory and (2) the "state-created danger" theory. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 197-201 (1989); J.R. v. Gloria, 593 F.3d 73, 79 & n.3 (1st Cir. 2010). Both exceptions are present in this case, and the Defendants are therefore liable for the harm that T.K. suffered.

When a minor is in school custody as they are during the time they are attending a public school there may be a "special relationship" that creates an affirmative duty to protect the minor from harm. See DeShaney, 489 U.S. at 199-200 imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); J.R., 593 F.3d at 80 (assuming a "special relationship" between the state and children placed in foster care); Nicini v. Morra, 212 F.3d 798, 807 (3d Cir. 2000) [C]hildren in the custody of a state had a constitutional right to be reasonably safe from harm...."): Taylor v. Ledbetter, 818 F.2d 791, 795 (11th Cir. 1987) ("The state's action in assuming the responsibility of finding and keeping the child in a safe environment placed an obligation on the state to insure the continuing safety of that environment. Barnstable's failure to meet that obligation, as evidenced by the child's injuries, in the absence of overriding societal interests, constituted a deprivation of liberty under the fourteenth amendment."). The special relationship between T.K. and the Defendants existed at least as long as she was in the Barnstable High School, and the Defendants should be held liable for the harm that befell T.K. while she was in their care and costody while attending school.

Although the public agencies does not usually have the obligation to protect an individual against private violence, states, state and municipal  and state actors can be held liable for "state-created danger," where "the government affirmatively acts to increase the

threat to an individual of third-party private harm." See DeShaney, 489 U.S. 189, 197 (1989); Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004). Defendants argument erroneously rely on the limits of Barnstable's duty to protect citizens from one another but does not place any limits on the state's duty not to inflict harm on its citizens.

As one court explained, "if the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit." Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982). Thus, even though children may not have a due process right to be protected from abusers Barnstable and it employees may not itself subject children to abuse by knowingly delivering them into the hands of abusers. Jervis v. McMullen, 186 F.3d 1066, 1073 (8th Cir. 1999) (denying the state's motion to dismiss in a case where a child was abused in the custody of biological parent) As here, Defendants are clearly liable for allowing T.K. into contact with an known juvenile criminal imposes upon it a corresponding duty to assume some responsibility for her safety and general well-being."); J.R., 593 F.3d at 80 (assuming a "special relationship" between the state and children placed in foster care); Taylor v. Ledbetter, 818 F.2d 791, 795 (11th Cir. 1987) ("The state's action in assuming the responsibility of finding and keeping the child in a safe environment placed an obligation on the state to insure the continuing safety of that environment. The state's failure to meet that obligation, as evidenced by the child's injuries, in the absence of overriding societal interests, constituted a deprivation of liberty under the fourteenth amendment."). The special relationship between T.K. and Falvio Desantos existed at least as long as she was in the 8th grade at Barnstable High School and the Defendants should be held liable for the harm that befell T.K. while she was in her 8th grade year in the Barnstable Schools.Although Barnstable and its employees do not usually have the obligation to protect an individual

against private violence, states and state actors can be held liable for "state-created danger," where "the government affirmatively acts to increase the threat to an individual of third-party private harm." See DeShaney, 489 U.S. 189, 197 (1989); Coyne v. Cronin, 386 F.3d 280, 287 (1st Cir. 2004). DeShaney, clearly does not place any limits on the state's or towns duty not to inflict harm on its citizens.

The Defendants with the knowledge that Flavio was a sexual predator imposes upon it a corresponding duty to assume some responsibility for her safety and general well-being."); J.R.,593 F.3d at 80 environment placed an obligation on the state to insure the continuin safety of that environment. The Complaint alleges sufficient facts to suggest that Defendants' conduct, substantially departed from accepted professional judgment, deprived T.K. of conditions of reasonable care and safety, and shocked the conscience. It would therefore be premature to dismiss the Complaint at this early stage of the proceedings.

If the defendants' employees knowingly placed [the child] in a position of danger, they would not be shielded from liability by the decision in DeShaney. DeShaney and the cases following it...hold is that the Constitution the officers are complicit in the violence, they are liable." (citations omitted)); Tazioly v. City of Philadelphia, No. CIV. A. 97-CV-1219, 1998 U.S. Dist. LEXIS 14603, at *21, (Pa. D. Sept. 10, 1998) ("[A] be held liable under § 1983 in cases where the state terminates satisfactory foster care and places a child in the custody of a biological [parent] with *known* propensities for violent and bizarre behavior, thereby increasing the foreseeable risk of harm to the child.")

Finally, the Defendants' motion to dismiss as to 42 USC 1983 should be denied because the law in the First Circuit is that where facts relevant to the immunity defense regarding the reasonableness of an official's action are in dispute, "that factual dispute must

be resolved by a fact finder." <u>Prokey v. Watkins,</u> 924 F.2d 67, 72 (1st Cir. 1991). As such, the Defendants' motion regarding Plaintiff s 1983 claims should be denied, because the Plaintiff has satisfied their burden of alleging sufficient facts in the Complaint to demonstrate how the Defendants violated T.K.s Fourteenth Amendment rights.

**E.     Response to Defendants argument to dismiss Counts IV and V– Disability Discrimination Against All Defendants**

Defendants claim that the plaintiffs in this case failed to exhaust the required administrative remedies as mandated by either the IDEA, (20 USC 1400, section 504 (29 USC 794) the Americans With Disabilities Act, ADA,  is clearly false. The plaintiffs in this case did file a hearing request before the Bureau of Special Education Appeals, (BSEA) on 11/21/2016, a redacted copy is attached here to as Exhibit #1. The hearing request is clear and concise as to the issues over which the BSEA has jurisdiction and also notes other statutes that may be tied to the jurisdiction of the BSEA however the BSEA refuses to consider, acknowledge, or permit any statutory arguments, complaints or decisions beyond the very limited legal authority of the BSEA as to school districts and the failure to provide free and appropriate education to children. The BSEA has no legal authority to order money damages as to any failure of the school district provide proper services or supports under the IDEA or section 504. School district did file motion to dismiss upon receipt of the BSEA hearing request to which the parents did file a response on 12/7/2016 which is attached hereto as Exhibit #2.  The BSEA allowed the case to go forward however the Barnstable School Department given the circumstances of Mr. Desantos and his acts upon T.K. Barnstable offered the  a settlement agreement to the parents which dealt with issues solely within to the scope of the BSEA's authority. The agreement relates to the fact that TA was placed at

Pilgrim Collaborative a day program and ultimately placed the Dr. Franklin Perkins School an intensive therapeutic residential program to deal with her serious emotional problems. See Exhibit #3.  The agreement did resolve the very limited issues over which the BSEA has jurisdiction and therefore permitted the case currently before the court go forward. There are many cases out there which have denied access to federal claims where issues were not put before the BSEA for resolution. The most classic case is *Frazier Vs Fairhaven* 1-99-cv-10102-RCL (Federal District Court Boston 2000) which was brought to Federal District Court over issues that occurred regarding the Fairhaven school district and was dismissed by the federal court for failure to first bring the issues which dealt with student on an IEP before the Bureau of Special Education Appeals  even though all of the claims in federal court specifically did not bring up any issue over which the BSEA has authority specifically dealing with special education issues and statutes. The documents listed as 1, 2, and 3 have been redacted and or blacked out as to the names of the plaintiffs in this case.

It is clear from the complaint that 1. T.K. is a student with a disability, 2. T.K.  was denied therapy and services for a number of months after the school learned of the rape which did cause T.K. emotional decline and did cause the parents to seek help from the juvenile court which did place T.K. in a therapeutic program for 90 days as she was not receiving services or supports from Barnstable which could effectively deal with her decline, 3. clearly there was no basis for the refusal of services and the refusal was clearly due to Barnstable's discrimination based on T.K.'s severe emotional disability caused by the rape.

## **CONCLUSION**

Therefore given Plaintiffs statement of facts as noted in their complaint and their argument in opposition to the defendants motion to dismiss plaintiffs complaint defendants

motion and argument should be denied pending discovery. Defendants did not provide this court any affidavit or document to support their argument as such the facts in their argument are clearly speculative and unsupported.

                                      RESPECTFULLY SUBMITTED,

                                      Respectfully submitted,
                                      The Plaintiffs
                                      By their attorney,
                                      /s/ Michael W. Turner Esq.
                                      _____
                                      Michael Turner, Esq
                                      BBO #: 565820
                                      242 Wareham Road
                                      P.O. Box 910
                                      Marion, MA 02578
                                      Tel: (508) 748-2362
                                      Fax: (508) 748-6836
                                       Email  mturner@meganet.net

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered participants on March 12, 2018.

                                      /s/ Michael W. Turner
                                      Michael W. Turner