UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| T.K., with and through her parents, G.K. and V.K., )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TOWN OF BARNSTABLE, BARNSTABLE )<br>PUBLIC SCHOOLS, PATRICK CLARK and )<br>MEG MAYO-BROWN, )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.<br>17-cv-11781-DJC |

**REPLY TO OPPOSITION TO MOTION TO DISMISS**
**(Leave to File Granted on April 27, 2018, ECF #21)**

Defendants Town of Barnstable, Barnstable Public Schools, Patrick Clark (Principal, Barnstable High School) and Meg Mayo-Brown (Superintendent, Barnstable Public Schools), hereby reply to matters raised in Plaintiffs' Opposition to Defendant's [sic] Motion to Dismiss, ECF # 18 ("Opp."). Plaintiffs' arguments against dismissal are fatally flawed and should be rejected.

**1. The Complaint does not support Plaintiffs' assertion that Defendants had actual knowledge of a risk of sexual assault and subsequent harassment.**

Plaintiffs repeatedly assert that their Title IX and negligence claims (Count I and Counts II, II and X) survive dismissal because BPS was aware that the male student had a history of sexual assault – indeed, that he was a "sexual predator." See, e.g., Opp. at 5-6, 11, 16. However, there are no Complaint allegations – Plaintiffs certainly point to none – that could possibly lead to this conclusion.

As already shown, Plaintiffs' allegations about the male student's past "criminal behavior" and involvement with drugs fall far short of showing that BPS was on actual notice

that he posed a substantial risk to sexually assault T.K.  See Memorandum of Law in Support of Motion to Dismiss, ECF # 12, ("Memo") at 6, 9-10.  Without more, and despite Plaintiffs' bald claims otherwise, they have not stated viable Title IX and negligence claims.

Similarly unavailing (if not more confusing) is Plaintiffs' contention that Defendants had actual notice of continuing harassment after the alleged assault.  Most importantly, Plaintiffs offer no counter to Defendants' argument that the Complaint fails to provide any facts – who, what, where, why, when – that could possibly support their conclusory, generalized allegations of continuing harassment, never mind that Defendants had actual knowledge thereof.  See Memo at 7-8.  Rather, Plaintiffs assert that because high school teachers "closely monitored" 8th grade students like T.K., they "quickly came to know about the allegations, [making it] reasonably assumed the abuse allegations were reported up the administration chain to the Defendants." Opp. at 4.

Even were these allegations pled in the Complaint and the inferential leaps Plaintiffs urge logically sound – they are not – Title IX liability requires that an "appropriate person" ("at a minimum, an official of the [school district] with authority to take corrective action to end the discrimination") have actual notice of harassment.  Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998).  The Supreme Court thus expressly precludes Plaintiffs' unsupported attempt to impute teachers' alleged knowledge of peer-on-peer harassment on to the school district.  See Davis v. Monroe County Bd. of Ed., 526 U.S. 629, 642 (1999).  See also Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (noting that Title IX's actual knowledge requirement "has considerable bite").

Indeed, that teachers may have "closely monitored" students is plainly insufficient to establish that they (never mind anyone "up the administration chain") actually knew harassment

occurred. See, e.g., Gabrielle M. v. Park Forest-Chicago Heights, Ill. Sch. Dist., 315 F.3d 817, 823 (7th Cir. 2003) (rejecting actual notice of peer harassment based on allegation that "teachers constantly supervise kindergartners"). That teachers may have heard about unspecified "allegations of abuse" is similarly inadequate: "the case law is clear that only reliable and unambiguous reports have been deemed sufficient to provide actual knowledge." Doe v. Bradshaw, 203 F. Supp. 3d 168, 185-86 (D. Mass. 2016) (collecting cases).

In short, conclusory labels and naked assertions aside, there are no Complaint facts alleged from which one could reasonably infer that appropriate BPS officials had actual notice of continuing sexual harassment,[1/] let alone that they responded thereto with deliberate or negligent indifference. Lacking even the most minimal factual support, Plaintiffs' Title IX and negligence claims fail.

### 2. Plaintiffs' "special relationship," "state created danger" and qualified immunity theories are not relevant, pled or viable.

Plaintiffs also oppose dismissal of their claims for negligence (Counts II, III and X), infliction of emotional distress (Counts VIII and IX) and § 1983 (Count VI) by invoking the Fourteenth Amendment's substantive due process-based "special relationship" and "state-created danger" doctrines (see Opp. at 5-6, 10-11, 14-16) and arguing that the individual Defendants are not entitled to qualified immunity (see Opp. at 6-7, 11-13). Plaintiffs completely miss the mark.

First, substantive due process and qualified immunity have no bearing whatsoever on Plaintiffs' state-law tort claims. See generally, F.D.I.C. v. Meyer, 510 U.S. 471, 478 (1994) ("By definition, federal law, not state law, provides the source of liability for a claim alleging the

---

[1/] In furtherance of actual notice, Plaintiffs blithely claim that "in the Motion, Defendants concede that they had knowledge of the assaults." Opp. at 4. See also, Id. ("Defendants…acknowledge that they knew about the assaults."). Defendants have conceded no such thing. They are merely attempting to fully address Plaintiffs' convoluted, contradictory pleading within the confines of a Rule 12(b)(6) motion.

deprivation of a federal constitutional right."). Plaintiffs' multiple attempts to defend state tort claims with federal constitutional law concepts are inapt.

Second, the individual Defendants have not (yet) even argued that they are entitled to qualified immunity. Plaintiffs' extended discussions about qualified immunity are therefore beside the point.

Third, Plaintiffs explicitly limit their § 1983 claim – the only claim to which substantive due process could possibly apply – to equal protection. Alleging only an equal protection violation, Plaintiffs have no substantive due process claim. See, e.g., Complaint ¶¶ 72 ("The defendant [sic] T.K. has a constitutional right to the equal protection clause of the 14th amendment to be free from discrimination, sexual harassment, intimidation and sexual assault based on her gender."); 74 ("But for her trying to the plaintiff [sic] would not have been subjected to such disparate sexually offensive treatment as compared to male students.").

Fourth, even had Plaintiffs asserted a § 1983 claim based on substantive due process, it would fail. "[O]rdinarily a state's failure to intervene to prevent harm to an individual by a private actor is not a constitutional violation." Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir.1999) (citing DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189 (1989)). "[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause," DeShaney, 489 U.S. at 197, because "the purpose of the Due Process Clause is to protect the people from the state, not to ensure that the state protects them from each other." Rivera v. Rhode Island, 402 F.3d 27, 34 (1st Cir. 2005).

Here, in alleging only that Defendants failed to protect T.K. from sexual abuse by a private third party, Plaintiffs do not state a viable substantive due process claim. See, e.g., J.R. v. Gloria, 593 F.3d 73, 79-81 (1st Cir. 2010) (no substantive due process violation for state social

4

workers' failure to investigate and prevent sexual abuse of twins placed in foster care); Morgan v. Town of Lexington, 138 F.Supp.3d 82 (D. Mass. 2015) (school officials' ignoring, discouraging and retaliating against student for complaints of bullying not a substantive due process violation); Thomas v. Springfield Sch. Comm., 59 F. Supp. 3d 294, 307-08 (D. Mass. 2014) (no substantive due process violation for rape of disabled student by another student on school grounds); Doe v. Town of Bourne, 2004 WL 1212075, at *6 (D. Mass. May 28, 2004) (school officials' referral of rape victim to counselor while declining to investigate sexual assault not a substantive due process violation).

Plaintiffs nevertheless press on, attempting to invoke the two exceptions to DeShaney's rule against affirmative obligations under the Due Process Clause: the "special relationship" and "state-created danger" doctrines. See Opp. at 5-6, 14-17. Although "special relationships" may give rise to the state's duty to protect individuals from third parties' harmful acts (DeShaney, 489 U.S. at 199-200; Monahan v. Dorchester Counseling Ctr., Inc., 961 F.2d 987, 991-92 (1st Cir. 1992)), they are generally limited to situations where the state exercises functional custody over an individual, thereby restraining his freedom to act on his own behalf, such as "incarceration, institutionalization, or some other restraint of personal liberty." Morrow v. Balaski, 719 F.3d at 168, quoting DeShaney, 489 U.S. at 200. As a result, courts have consistently refused to recognize a "special relationship" between public schools and their students, defeating Plaintiffs' suggestion that by mere virtue of T.K.'s school attendance, Defendants had a constitutionally-based duty to protect her from third parties. See Hasenfus, 175 F.3d at 71 and n.2 ("The circuits that have confronted this issue have uniformly rejected this [special relationship] argument, holding that school children are not captives of the school authorities and the basic responsibility for their care remains with their parents.").

Moreover, assuming the First Circuit even recognizes a substantive due process claim based on a "state-created danger" theory,[2] Plaintiffs fall far short. To state such a claim, a plaintiff must allege that: 1) his harm was reasonably foreseeable; 2) government actors engaged in conduct that "shocks the conscience;"[3] 3) plaintiff's relationship with government made him a foreseeable victim of such conduct (i.e., he was not a mere member of the general public); and 4) the government actors created the danger, or rendered the plaintiff more vulnerable to such danger, through <u>affirmative</u> acts – mere omissions are not enough.  See <u>Bright v. Westmoreland County</u>, 443 F.3d 276, 281 (3rd Cir. 2006).

Despite this stringent standard, Plaintiffs cursorily claim that "defendants caused a state-created danger by failing to protect T.K. from their [sic] sexually abusive peer" and that they "failed to supervise and oversee [the male student], resulting in continued sexual and physical assaults."  Opp. at 5.  Such allegations fail to show any reasonably foreseeable harm (never mind a foreseeable harm to T.K. in particular), that Defendants actually created any danger, or, most importantly, that Defendants' conduct was truly outrageous, uncivilized or intolerable abuses of power that shock the conscience.  See <u>Melendez-Garcia v. Sanchez</u>, 629 F.3d 25, 37 (1st Cir. 2010) ("The burden to show state action that shocks the conscience is extremely high, requiring stunning evidence of arbitrariness and caprice that extends beyond mere violations of state law, even resulting from bad faith to something more egregious and more extreme.") (internal quotation marks omitted).

---

[2] The First Circuit "has never embraced the existence of a substantive due process state-created danger theory, even for citizens." <u>Enwonwu v. Gonzales</u>, 438 F.3d 22, 30 (1st Cir. 2006). <u>See also Rivera</u>, 402 F.3d at 35.

[3] To support a claim of "behavior so extreme as to shock the conscience," courts require "conduct that is truly outrageous, uncivilized, and intolerable." <u>Hasenfus</u>, 175 F.3d at 72,  The conduct must exhibit "an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." <u>González-Fuentes v. Molina</u>, 607 F.3d 864, 881 (1st Cir. 2010) (internal alterations and quotation marks omitted).

> Merely alleging state actions which render the individual more vulnerable to harm, under a theory of state created danger, cannot be used as an end run around DeShaney's core holding [that] a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.

Rivera, 402 F.3d at 38 (holding that substantive due process rights of murder witness, who was killed on the orders of the murderer, were not violated by police who failed to protect her after promising to do so).

Indeed, Plaintiffs' allegations involve no affirmative acts at all, but are rather exclusively (and insufficiently) based on Defendants' purported failure to act.  In short, Plaintiffs have not pled and cannot plead a viable substantive due process violation claim.

### 3. Plaintiffs' appended documents support dismissal of their disability claims.

In opposing dismissal of their disability discrimination claims under § 504 and the ADA (Count IV and V), Plaintiffs attach three documents, neither appended nor referred to in the Complaint, that ostensibly show they exhausted their administrative remedies before BSEA. These documents actually show the opposite.

Review of Plaintiffs' demand for a BSEA hearing (Exhibit 1) shows they neither alleged nor otherwise raised any disability-related claim.  Because their disability discrimination claims in this Court are at least partly based on the denial of FAPE (see Complaint at ¶ 34 (Defendants "denied [T.K.] access to FAPE pursuant to the IDEA…")), Plaintiffs were required to, but did not, litigate them before BSEA.  See Memo at 16-18 (citing 20 U.S.C. § 1415(l); Rose v. Yeaw, 214 F.3d 206, 210 (1st Cir. 2000); CBDE Public Schools v. Massachusetts BSEA, 2012 WL 4482296 at *6 (D. Mass. Sept. 27, 2012).

Moreover, the agreement between the parties settling the BSEA dispute (Exhibit 3), signed by both Plaintiff-parents, states:  "Parents waive any claims against Barnstable for special education and related services, including limited to compensatory services through June 30,

2017." Thus, not only have Plaintiffs failed to exhaust, they have affirmatively waived any right to pursue the disability claims they assert in this case.  See generally, Michelle K. v. Pentucket Reg'l Sch. Dist., 79 F. Supp. 3d 361, 370-72 (D. Mass. 2015).

Regardless of exhaustion and settlement, Plaintiffs have utterly failed to allege facts that could possibly indicate disability-based animus or that T.K. was denied any non-FAPE-related reasonable accommodation she sought.  See Memo at 18.  For all these reasons, Plaintiffs have failed to state a viable disability discrimination claim and their § 504 and ADA claims should be dismissed.

### 4.    Plaintiffs fail to address Defendants' other arguments.

Finally, Plaintiffs offer no substantive (or otherwise cogent) counter to Defendants' other arguments, including that:

1)   The individual Defendants are personally immune from negligence under M.G.L. c. 258, § 2 (Memo at 8-9, 12);

2)   The Town and BPS are not liable for negligence because they were not the "original cause" of the harm under M.G.L. c. 258, § 10(j) (Memo at 9-10);

3)   The Town and BPS are immune from intentional torts under M.G.L. c. 258, § 10(c) (Memo at 11);

4)   The individual Defendants are not liable for intentional torts based on their alleged failure to act (Memo at 11-12); and

5)   The Town and BPS are not liable under § 1983 because there is no allegation of a deprivation due to an official policy or custom (Memo at 14-15).

Plaintiffs having failed to offer any legitimate argument opposing these grounds for dismissal, and for all the other reasons stated in this Reply and Defendants' Memorandum, Defendants respectfully request that this Honorable Court dismiss Plaintiffs' Complaint in its entirety with prejudice.

Respectfully submitted,

TOWN OF BARNSTABLE, BARNSTABLE PUBLIC SCHOOLS, PATRICK CLARKE and MEG MAYO-BROWN,

By their attorneys,

/s/John M. Simon
John M. Simon (BBO #645557)
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated: April 27, 2018

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered participants on April 27, 2018.

/s/John M. Simon
John M. Simon