**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| T.K., with and through her parents, G.K. and V.K., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| TOWN OF BARNSTABLE, BARNSTABLE ) | No. 17-cv-11781-DJC |
| PUBLIC SCHOOLS, PATRICK CLARK and ) | |
| MEG MAYO-BROWN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **August 7, 2018**

## I.    Introduction

Plaintiff T.K., a minor, filing with and through her parents, G.K. and V.K. (collectively, "Plaintiffs"), has filed this lawsuit against Defendants the Town of Barnstable ("the Town"), Barnstable Public Schools ("BPS"), Patrick Clark, Principal of Barnstable High School ("Clark") and Meg Mayo-Brown, Superintendent of BPS ("Mayo-Brown") (collectively, "Defendants"), alleging violations of Title IX, 20 U.S.C. § 1681 (Count I), negligence (Counts II and III), disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act") and Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. ("ADA") (Counts IV and V), Fourteenth Amendment Equal Protection violations under 42 U.S.C. § 1983 ("§ 1983") (Count VI), intentional infliction of emotional distress (Count VII), negligent infliction of emotional distress (Count VIII) and statutory negligence under the Massachusetts Torts Claims Act, Mass. Gen. L. c. 258, §2 ("MTCA") (Count IX).  D. 1 ¶¶ 40-87; D. 26-2 ¶¶ 70-115.  Defendants now move to dismiss Plaintiffs' complaint under Fed. R. Civ. P. 12(b)(6).  D. 11.  Plaintiffs move to

amend their complaint, D. 23, which Defendants oppose, D. 25. For the reasons stated below, the

Court ALLOWS IN PART and DENIES IN PART Defendants' motion to dismiss, D. 11, and

ALLOWS Plaintiffs' motion to amend, D. 23.

## II.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,

a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). Reading the complaint "as a whole," the Court must conduct

a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir.

2013). First, the Court "distinguish[es] the complaint's factual allegations (which must be

accepted as true) from its conclusory legal allegations (which need not be credited)." Saldivar v.

Racine, 818 F.3d 14, 18 (1st Cir. 2016) (quoting Cardigan Mountain Sch. v. N.H. Ins. Co., 787

F.3d 82, 84 (1st Cir. 2015)). Second, taking the well-pled facts as true and "drawing all reasonable

inferences in the pleader's favor," the Court determines if the facts "plausibly narrate a claim for

relief." Id.

## III.   Factual Background

The following allegations, unless otherwise noted, are drawn from the amended complaint,

D. 26-2, and are accepted as true for the purposes of considering the motion to dismiss.[1]  They

---

[1] Three months after Defendants moved to dismiss, Plaintiffs filed their motion to amend the complaint under Fed. R. Civ. P. 15(a)(2), D. 23, which Defendants opposed, D. 25. Plaintiffs then submitted the proposed amended complaint. D. 26-2. For reasons discussed herein, the Court does not view the proposed amendments as futile—particularly regarding additional facts alleged to support Plaintiffs' Title IX claim—and concludes that the interests of justice support allowing such amendments here. See Fed. R. Civ. P. 15(a)(2). The Court, therefore, ALLOWS Plaintiffs' motion to amend, D. 23, and relies upon the allegations in the amended complaint, D. 26-2, as Plaintiffs' relevant pleading here.

occurred during the 2014-2015 school year, while T.K. was an eighth grade student at Barnstable High School.  D. 26-2 ¶¶ 13-14.[2]

Falvio Desantos, a tenth grade student at Barnstable High School during this time, allegedly drugged and raped T.K. in a stairwell in the school on November 1, 2014.  D. 26-2 ¶¶ 15, 22, 24-25.  Desantos had "a long history of criminal behavior both in and out of school," including selling drugs in the school, leading to his being on "criminal probation" at the start of the school year.  D. 26-2 ¶¶ 16, 30.  Barnstable High School and the principal, Clark, were kept apprised of Desantos's "criminal charges" through the school's resource officer and member of the Barnstable Police Department, Reid Hall.  D. 26-2 ¶¶ 17-18.

T.K. experienced severe, ongoing emotional trauma as a result of the rape, resulting in a pattern of cutting herself, drug addiction, alcohol and marijuana use and other "emotional and behavioral changes."  D. 26-2 ¶¶ 26-29, 32.  BPS's records reflect that T.K. had "school attendance issues" and "increasing[ly] bad behavior."  D. 26-2 ¶¶ 31, 45-46.  After the incident, T.K. was "regularly bull[i]ed on an ongoing basis," as girls allegedly slapped her and stole various items of hers.  D. 26-2 ¶ 34.  She "suffered ongoing harassment and intimidation from her classmates as the rape and drug inducement became well known to the whole student body," including "sexual propositions, name calling, and rejections . . . in school and via social media."  D. 26-2 ¶¶ 43-44.

As alleged, the high school administration—including Hall—failed to report any actions inflicted upon T.K., which would have "cause[d] a criminal charge to be pressed against any person including but not limited to Falvio Desantos."  D. 26-2 ¶ 35.  This failure to report allegedly violates the Town's "Bullying Plan."  D. 26-2 ¶ 63.  Melissa Collins, T.K.'s high school house

---

[2] Prior to the 2014-2015 school year, BPS merged the eighth grade into the Barnstable High School.  D. 26-2 ¶ 13.

master and vice principal,[3] informed T.K.'s parents of the "incidents with Falvio and the other students" in spring 2015, noting that "she had attended various school meetings regarding T.K." D. 26-2 ¶ 38. Hall then set up "a specialized interview with T.K. regarding her rapes and emotional issues at the Barnstable County Juvenile Center." D. 26-2 ¶ 39. At this interview, T.K. was unable to articulate the causes of her trauma. D. 26-2 ¶ 40. T.K. also alleges that Clark was aware of the incidents from which she suffered. D. 26-2 ¶ 44.

G.K. and V.K. regularly called the high school, including Collins and the special education coordinator, Kari Hoffman, expressing concern about T.K.'s needs. D. 26-2 ¶ 41. Barnstable did not develop "a comprehensive treatment plan" to address her trauma during that school year. D. 26-2 ¶ 43. At the end of the school year, T.K.'s parents requested a summer program and additional support, which the school denied. D. 26-2 ¶ 47. As a result, T.K. remained in G.K. and V.K.'s care, requiring their supervision at all hours, due to her "drug and emotional issues." Id. During T.K.'s ninth grade year, BPS placed her in the Plymouth Area Collaborative, "a day program for behavior[ally] disturbed and academically impaired children in Plymouth." D. 26-2 ¶ 49. This program ended at 2:30 p.m. each day, which created additional challenges for T.K. and her parents, who had to leave work early to be home for T.K. D. 26-2 ¶¶ 50-52.

T.K.'s parents sought assistance from the Barnstable Juvenile Court, which placed T.K. in a ninety-day drug treatment program at Grace House. D. 26-2 ¶ 54. Grace House and T.K.'s therapist recommended she enter a residential therapeutic program. D. 26-2 ¶ 55. After BPS "refused any residential placement and did no evaluation themselves," G.K. and V.K. requested a hearing before the Bureau of Special Education Appeals ("BSEA") in pursuit of a residential therapeutic program. D. 26-2 ¶¶ 55-56. BPS agreed to "an evaluation at the Dr. Franklin Perkins

---

[3] The amended complaint suggests that Collins's role included both functions. D. 26-2 ¶¶ 38, 41.

School," or "Perkins," a residential therapeutic program, the results of which were reviewed in March 2017. D. 26-2 ¶¶ 57-58. T.K.'s parents then withdrew the BSEA request. D. 26-2 ¶ 58. T.K.'s wellbeing substantially improved at Perkins and she returned home during the summer. D. 26-2 ¶ 59. In September 2017, she began attending another high school in another town where she has been "doing well." D. 26-2 ¶¶ 60-61.

## IV.    Procedural History

Plaintiffs instituted this action on September 18, 2017. D. 1. Defendants have now moved to dismiss for failure to state a claim. D. 11. After opposing Defendants' motion, D. 18, Plaintiffs moved to file an amended complaint, D. 23; D. 26-2. The Court heard the parties on the pending motions and took these matters under advisement. D. 27.

## V.    Discussion

Plaintiffs assert the same nine counts against Defendants in the amended complaint as in their original complaint. See D. 26-2 at 14-22; D. 1 at 11-20. In their amended complaint, Plaintiffs assert two claims—Title IX (Count I) and common law negligence (Count II)—against all Defendants, D. 26-2 at 14-16, whereas the original complaint addresses these claims towards only Barnstable and BPS, D. 1 at 11-13. The Court disregards these changes, however, as they are inconsistent with (1) Plaintiffs' statement that the amended complaint only "clarif[ies] facts and expand[s] the facts in support of Plaintiff's complaint" and "fix[es] typographical errors," and that "they do not substantially alter the allegations made in the Complaint nor charge the defendants with any further causes of action," D. 23 at 3; (2) the facts alleged in support of each claim, still addressing only Barnstable and BPS, D. 26-2 ¶¶ 72-83; and (3) Plaintiffs' continued pursuit of Count III, alleging common law negligence as to Defendants Clark and Mayo-Brown, D. 26-2 at 17. The Court also notes that Title IX establishes a private right of action only to claims against

educational institutions and not individual defendants, so including Defendants Clark and Mayo-Brown within Count I would be improper.  See Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 65 (1st Cir. 2002).  The Court thus strikes these changes in the amended complaint and reviews Counts I and II as alleged against Defendants BPS and Barnstable only, as asserted in the original complaint, D. 1 at 11-20.

A.      **Title IX (Count I)**

Plaintiffs assert a claim against Barnstable and BPS under Title IX based on their actions surrounding T.K.'s alleged rape and subsequent sexual harassment and intimidation.  D. 26-2 ¶¶ 70-78.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Although "Title IX's express means of enforcement [is] by administrative agencies," Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 288 (1998), the statute implies a private right of action entitling plaintiffs to injunctive relief and damages for sexual harassment under certain limited circumstances, Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009); Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 639-40 (1999).  To state a claim under Title IX for "student-on-student sexual harassment," a plaintiff must show: "(1) that he or she was subject to 'severe, pervasive, and objectively offensive' sexual harassment by a school peer, . . . (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits . . . (3) [and that the funding recipient] knew of the harassment, (4) in its programs or activities and (5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances."  Porto v. Town of Tewksbury, 488 F.3d 67,

72-73 (1st Cir. 2007); see Davis, 526 U.S. at 644 (explaining that a school can be liable to peer-to-peer harassment only if "its deliberate indifference 'subjects' its students to harassment").

As an initial matter, the Court agrees with Defendants that Plaintiffs have failed to state a Title IX claim against the Town. D. 12 at 5 n.5. Plaintiffs have neither alleged any facts as to Barnstable's actions nor provided a basis for the Town's liability here. See D. 26-2 ¶¶ 70-78. The Court thus dismisses the Plaintiffs' Title IX claim as to the Town.

As to BPS, Defendants argue that Plaintiffs have failed to allege sufficient facts to demonstrate that BPS was deliberately indifferent to any harassment of which it had actual knowledge. D. 12 at 5-8. Defendants first argue that Plaintiffs have failed to make a plausible showing that Defendants' actions caused the alleged rape itself. D. 12 at 6-7; see Davis, 526 U.S. at 642-43 (holding defendants liable under Title IX "where their own deliberate indifference effectively 'caused' the discrimination"). Although certain of Plaintiffs' allegations suggest that Plaintiffs seek to hold Defendants liable for the rape itself, see D. 1 ¶ 34; D. 26-2 ¶ 63, Plaintiffs' Title IX claim focuses on Defendants' actions after the alleged rape, in its allegedly inadequate response to T.K.'s complaint and deliberate indifference to subsequent sexual harassment and assaults. D. 26-2 ¶¶ 70-78. Moreover, in Plaintiffs' opposition to Defendants' motion, Plaintiffs do not contend that they have stated a claim as to any BPS inaction prior to the alleged rape, rather focusing only upon the school's knowledge of the rape and inappropriate response to that assault. D. 18 at 4. The Court likewise focuses on this later timeframe in determining whether Plaintiffs have stated a plausible Title IX claim.

Defendants next argue that Plaintiffs have failed to plausibly allege severe, pervasive and objectively offensive harassment after the alleged rape, arguing that their factual allegations supporting any continued sexual harassment are "conclusory labels and generalities," without "the

who, what, where, when and why necessary to turn [these] 'naked assertions' into properly pled facts." D. 12 at 7. Defendants do not contest, however, that the rape itself would, if true, constitute severe, pervasive and objectively offensive harassment. See D. 12 at 5-7; Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 172 (1st Cir. 2007), rev'd on other grounds, 555 U.S. 246 (2009). This incident alone, although occurring prior to notice to BPS, could serve as the basis for a Title IX claim if the "incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a scholastic program or activity." Fitzgerald, 504 F.3d at 172-73. The Court may consider, for example, allegations of "post-notice interactions between the victim and the harasser." Id. at 173. Plaintiffs allege that T.K.'s alleged assaulter remained a Barnstable High School student after the rape and "continued to press T.K. for sex and did force her to take drugs to which she became addicted," and the school did not "initiate any reasonable measures to protect T.K. from" him. D. 26-2 ¶¶ 29, 76. Plaintiffs' amended complaint includes some additional factual allegations regarding subsequent harassment, including that T.K.'s classmates allegedly slapped her and stole various items of hers, including the shoes off her feet, as well as "sexual propositions, name calling, and rejections." D. 26-2 ¶¶ 34, 43-44. These allegations do serve to demonstrate, however, failures in BPS's response to reports of the initial alleged rape, if they had actual knowledge of the incident.

Defendants also argue that Plaintiffs have failed to plausibly allege that BPS had actual knowledge of any sexual assault or harassment to which T.K. was subjected. D. 12 at 8. In Plaintiffs' amended complaint, however, Plaintiffs allege additional facts specifying which faculty members knew about the rape and when. D. 26-2 ¶¶ 38, 39, 41. Although Plaintiffs' allegation that Clark, the principal, knew about the assault may itself be conclusory, as Defendants argue, D. 12 at 8; D. 22 at 2, that allegation is supported by reasonable inferences based upon Plaintiffs'

allegations that the incident was known by the school counselor and resource officer, and that T.K.'s parents made frequent contact with school faculty regarding T.K.'s welfare. Defendants rely on <u>Doe v. Bradshaw</u>, 203 F. Supp. 3d 168, 185-86 (D. Mass. 2016), to argue that any "allegations of abuse" that teachers heard do not amount to actual knowledge, D. 22 at 3, but in <u>Bradshaw</u>, the court was reviewing the case at summary judgment, <u>Bradshaw</u>, 203 F. Supp. 3d at 186. It is inappropriate for the Court to require the same extent of proof from Plaintiffs at this early juncture.

Plaintiffs have plausibly alleged that BPS was deliberately indifferent to T.K.'s assault. The Court recognizes that "a claim that the school system could or should have done more is insufficient to establish deliberate indifference." <u>Porto</u>, 488 F.3d at 73; <u>see</u> <u>Fitzgerald</u>, 504 F.3d at 174. As alleged, however, beyond two meetings with T.K., the school did not address the alleged assault or protect T.K. from further harassment or assault during T.K.'s eighth grade year. Moreover, although an institution that "takes timely and reasonable measures to end the harassment . . . is not liable under Title IX for prior harassment," the institution may still be liable under Title IX if those measures fail to solve the problem. <u>Wills v. Brown Univ.</u>, 184 F.3d 20, 26 (1st Cir. 1999). Indeed, "if it learns that its measures have proved inadequate, it may be required to take further steps to avoid new liability." <u>Id.</u>; <u>see</u> <u>Vance v. Spencer Cty. Pub. Sch. Dist.</u>, 231 F.3d 253, 261 (6th Cir. 2000) (concluding that "[w]here a school district has actual knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances"). Here, Plaintiffs allege T.K.'s parents were in regular contact with Barnstable High School, but the school did not enroll T.K. in an external program until the following school year, and did not provide a residential facility until fall of 2016. D. 26-2 ¶¶ 41, 49-51, 57. Given this case's posture and the additional

facts alleged in the amended complaint, the Court concludes that dismissing Plaintiffs' Title IX claim at this time is not warranted. "It is axiomatic that a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232, 246 (1980) (internal quotation marks and citation omitted). The Court thus DENIES Defendants' motion to dismiss Plaintiffs' Title IX claim as to BPS.

B.    **State Law Tort Claims (Counts II, III, VII, VIII and IX)**

Plaintiffs assert state law tort claims against all Defendants, including common law negligence, intentional infliction of emotional distress, negligent infliction of emotional distress and violation of Mass. Gen. L. c. 258, §2. D. 26-2 ¶¶ 79-88, 105-15. Because all Defendants are municipal entities or employees, the MTCA provides the exclusive remedy for Plaintiffs' tort claims. Mass. Gen. L. c. 258, §2.[4] Plaintiffs do not dispute the application of the MTCA as to these claims. D. 18 at 7.

1.    *Plaintiffs Fail to State Negligence Claims (Counts II, III, VII and IX)*[5]

Defendants argue that all state law negligence claims should be dismissed as to Defendants Clark and Mayo-Brown under the MTCA. D. 12 at 8-9, 12-13. These individuals are "public employees," and the MTCA dictates that no "public employee shall be liable for any injury . . .

---

[4] The MTCA provides in relevant part that "[p]ublic employers shall be liable for injury . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . . The remedies provided by this chapter shall by exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer or[] the public employee or his estate whose negligent or wrongful act or omission gave rise to such claim . . . ." Mass. Gen. L. c. 258, §2.

[5] Plaintiffs' negligent infliction of emotional distress claim (Count VII) "may proceed to the same extent as the claim for negligence," Bradshaw, No. 11-cv-11593-DPW, 2013 WL 5236110, at *13 (D. Mass. Sep. 16, 2013), so the Court considers this claim in conjunction with Plaintiffs' negligence claims here.

caused by his negligent or wrongful act or omission while acting within the scope of his office or employment." Mass. Gen. L. c. 258 §§ 1-2; see Pollard v. Georgetown Sch. Dist., 132 F. Supp. 3d 208, 221 (D. Mass. 2015). Plaintiffs agree that "the employee-defendants were acting within the scope of their authority as employees throughout the relevant period." D. 18 at 10; D. 26-2 ¶¶ 8-9. These individual defendants are, therefore, shielded from liability under the MTCA. The Court thus dismisses with prejudice Counts III, VII and IX as to these individual Defendants.

BPS and the Town argue that the MTCA bars suit against them as well. D. 12 at 9-10. "Although the act statutorily eliminates the immunity that governmental bodies would ordinarily enjoy under common law, it sets forth several exceptions to that general waiver of sovereign immunity." Cormier v. City of Lynn, 479 Mass. 35, 39 (2018). The MTCA's waiver of sovereign immunity does not extend to claims "based on act or failure to act or prevent or diminish the harmful consequences of a condition or situation, including the violent or tortious conduct of a third person, which is not originally caused by the public employer or any other person acting on behalf of the public employer," Mass. Gen. L. c. 258, § 10(j).[6] This exception "eliminates government liability for a public employer's act or failure to act to prevent harm from the wrongful conduct of a third party *unless* the condition or situation was '*originally caused*' by the public employer." Cormier, 479 Mass. at 40 (quoting Brum v. Town of Dartmouth, 428 Mass. 684, 692, 695 (1999)) (emphasis in original). Consequently, Courts frequently dismiss claims against schools for "failure to prevent or address peer-to-peer bullying and harassment where the school cannot be considered the 'original cause' of plaintiff's injury." Harrington, 172 F. Supp. 3d at 349; see Doe v. Dubeck, No. 05-cv-11165-RW3, 2006 WL 1704261, at *3 (D. Mass. June 19,

---

[6] Both parties agree that for the purposes of state tort liability, the claims against the Town and BPS "rise and fall together." D. 12 at 9 n.9 (quoting Bradshaw, 2013 WL 5236110, at *12); D. 18 at 7.

2006).  A public employer may be the "original cause" of the injurious act only through an "affirmative action; a failure to act will not suffice." <u>Cormier</u>, 479 Mass. at 40.  This "affirmative action" can be said to create the "condition or situation" if it "materially contributed to creating the specific 'condition or situation' that resulted in the harm" inflicted by the third party. <u>Kent v. Commonwealth</u>, 437 Mass. 312, 319 (2002).  Failure to address the violent or tortious conduct after the fact amounts to failure to mitigate harm, which is barred by § 10(j). <u>See</u> <u>Harrington</u>, 172 F. Supp. 3d at 349; <u>Bradshaw</u>, 2013 WL 5236110, at *12.

BPS and the Town argue that because Plaintiffs fail to allege facts demonstrating that "BPS was on notice that the male student was a substantial risk to sexually assault anyone[,] . . . BPS was not the 'original cause' of the harm to T.K." D. 12 at 10.  Defendants also argue that Plaintiffs' allegations that BPS failed to mitigate the harm of the alleged rape by providing any further protection of T.K. do not save Plaintiffs' claim; Plaintiffs have failed to state plausibly that Defendants participated "in the initial injury-causing circumstance," <u>Armstrong v. Lamy</u>, 938 F. Supp. 1018, 1044 (D. Mass. 1996).  D. 12 at 10.

Plaintiffs concede that "a State's failure to protect an individual against private violence does not ordinarily constitute a violation," and that the Town and BPS are "shielded to some extent by 10(j)," but they argue that they have stated tort claims against these Defendants.  D. 18 at 5, 8. First, according to Plaintiffs, despite § 10(j)'s bar, "the due process clause is nevertheless implicated where the state and its employees did play a role in creating the danger or [] enhanced the danger to an individual."  D. 18 at 5.  They contend that they "have adequately pled that the defendants caused a state-created danger by failing to protect T.K. from their sexually abusive peer," explaining that Desantos "sexually and physically assaulted T.K. at the school on numerous occasions," and that the school staff knew of Desantos's prior sexual and physical assaults but

their failure to intervene resulted in additional assaults. Id. Yet Plaintiffs' due process arguments do not affect the Town's or BPS's liability under the MTCA. The MTCA waives the Commonwealth's sovereign immunity for certain tort claims, and this waiver does not extend to claims involving assault by a third party, Mass. Gen. L. c. 258, §10(j). Plaintiffs point to Morgan v. Town of Lexington, 138 F. Supp. 3d 82, 89 (D. Mass. 2015) as a "state-created danger" case, but the analysis in Morgan on which Plaintiffs here rely pertained to the plaintiff's Substantive Due Process claim, and not negligence claim. See D. 18 at 5. Whether Defendants' actions give rise to a constitutional claim here is a separate question—and belongs within the discussion of Plaintiffs' § 1983 claim, Count VI. There is no exception under the MTCA for a "state-created danger" apart from the Court's typical inquiry into whether the state employer was the "original cause" of the injury.

Plaintiffs argue that Defendants "might be called the 'original cause' of the 'condition or situation' that resulted in harmful consequences to T.K.," presumably focusing on the 2014 rape, "given that it hired did keep [sic] Falvio in the high school given his past criminal behavior and criminal charges." D. 18 at 9. Knowledge of Desantos's alleged criminal record, putting Defendants' "on notice of poor character," id., is not an "affirmative act" as contemplated by §10(j), and is, therefore, insufficient to give rise to a plausible claim that the Town and BPS were the "original cause" of the rape. See Cormier, 479 Mass. at 41. Plaintiffs' reliance on negligent hiring cases, D. 18 at 9 (citing Armstrong, 938 F. Supp. at 1056), is misplaced. Plaintiffs have not demonstrated that a school's decision hire or retain an employee with a criminal record or history of violence, see Bradshaw, 2013 WL 5236110, at *12, is akin to permitting a student with some alleged criminal history to remain at a public school under the MTCA. See Harrington, 172 F.

Supp. 3d at 350 (explaining that negligent hiring cases were inapposite where employees did not perpetrate the harassment).

Having failed to demonstrate with any plausibility how Plaintiffs' negligence claims against BPS and the Town are not barred by the MTCA, Plaintiffs have failed to state a negligence claim against these Defendants.

Additionally, Plaintiffs also fail to state a claim of negligent infliction of emotional distress on this basis. A claim for negligent infliction of emotional distress requires (1) negligence; (2) emotional distress; (3) causation; (4) demonstrable physical harm; and (5) that a reasonable person would have suffered emotional distress under like circumstances. Payton v. Abbott Labs, 386 Mass. 540, 557 (1982). Because Plaintiffs fail to satisfy the first element, their negligent infliction of emotional distress claim must also fail. See Armstrong, 938 F. Supp. at 1049; Parsons v. Town of Tewksbury, 26 Mass. L. Rptr. 555, 2010 WL 1544470, at *4 (Mass. Super. Ct. Jan. 19, 2010).

The Court thus ALLOWS Defendants' motion to dismiss Counts II, III, VII and IX with prejudice as to all Defendants.

> 2. *Plaintiffs Fail to State a Claim of Intentional Infliction of Emotional Distress (Count VIII)*

Under the MTCA, as Defendants point out, D. 12 at 11, public employers are immune from liability for all intentional torts. Mass. Gen. L. c. 258, § 10(c); see Pollard, 132 F. Supp. 3d at 231. The same is true for public employees sued in their professional capacities. Doe v. Fournier, 851 F. Supp. 2d 207, 225 (D. Mass. 2012). Individuals, however, are not shielded from liability in their personal capacities for intentional torts they commit. See, e.g., id.; Morgan, 138 F. Supp. 3d at 93. The Court thus dismisses Count VIII with prejudice as to the Town and BPS and now reviews the claim as to Defendants Clark and Mayo-Brown.

Stating a claim for intentional infliction of emotional distress requires plausible allegations that (1) the defendant "intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." Polay v. McMahon, 468 Mass. 379, 385 (2014). Stating a claim of intentional infliction of emotional distress is held to a "very high" standard in Massachusetts. Id.; see Kennedy v. Town of Billerica, 617 F.3d 520, 530 (1st Cir. 2010). Extreme and outrageous conduct "'go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community.'" Polay, 468 Mass. at 386 (quoting Roman v. Trs. of Tufts Coll., 461 Mass. 707, 718 (2012)) (alterations in original). This Court "may grant a motion to dismiss where the conduct alleged in the complaint does not rise to this level." Id.

Defendants correctly argue that Plaintiffs have failed to allege that Clark or Mayo-Brown engaged in any extreme and outrageous conduct toward T.K. D. 12 at 11-12. Indeed, as Defendants point out, id., Plaintiffs have not alleged—even in their amended complaint—any actions taken by these particular Defendants. The amended complaint describes Mayo-Brown's superintendent role as "ensuring that the School Committee followed the law" and states that she "personally participated in and/or directed actions which she knew or reasonably should have known did violate T.K.'s rights." D. 26-2 ¶ 8. Plaintiffs allege that Clark had similar responsibilities and that he "was personally responsible" for Desantos's attendance in the Barnstable High School. D. 26-2 ¶¶ 9, 33. The complaint alleges that they "failed to supervise students with a known criminal history," or "provide sufficient staff members to adequately supervise" such students, specifically Desantos, and that they "fail[ed] to establish sufficient safeguards to prevent sexual harassment" in the school. D. 26-2 ¶ 87. As the Court has explained,

Plaintiffs do not allege that Clark or Mayo-Brown were on notice that Desantos would commit sexual assault, and as to the subsequent bullying or harassment, this "passive conduct" alleged falls short of the high bar set for stating intentional infliction of emotional distress claims in Massachusetts. Morgan, 138 F. Supp. 3d at 94; see Maclellan v. Dahlheimer, 30 Mass. L. Rptr. 550, 2012 WL 6971005, *3 (Mass. Super. Ct. Dec. 21, 2012) (dismissing claim for school's failure to stop students from bullying plaintiff); Doe v. Emerson Coll., 153 F. Supp. 3d 506, 518 (D. Mass. 2015) (dismissing claim based on plaintiff's dissatisfaction with school policies and perceived inadequate sensitivity and investigation of an alleged rape); Bradshaw, 2013 WL 5236110, at *13 (dismissing claim based on school's failure to investigate complaints of coach's inappropriate sexual conduct with plaintiff, remedy peer harassment and provide plaintiff free appropriate public education).

### C.   The Rehabilitation Act and ADA Claims (Counts IV and V)

Plaintiffs also allege that Defendants discriminated against T.K. in violation of the Rehabilitation Act and the ADA. D. 26-2 ¶¶ 89-98. "The same standards . . . apply to claims under the ADA and under the Rehabilitation Act." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 11 n.1 (1st Cir. 2004). To state a claim here, Plaintiffs must plausibly allege that T.K.: (1) is a "qualified individual with a disability; (2) was either excluded from participation in or denied the benefits of [the school's] services, programs or activities, or was otherwise discriminated against; and (3) that such exclusion . . . or discrimination was by reason of [her] disability. Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). Plaintiffs allege that T.K.'s rape caused "emotional trauma and distress" qualifying her "to complete her education requirements and participate in the high school with reasonable accommodations and supports," and that "Defendants intentionally failed to provide T.K. with reasonable accommodations." D. 26-2 ¶¶ 94-98.

Defendants argue that Plaintiffs' claims are barred because Plaintiffs failed to exhaust their state administrative remedies before filing in federal court. D. 12 at 17. The Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400-91, provides that states receiving federal funding must provide "a free appropriate public education" ("FAPE") to all disabled children in their jurisdiction. See D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 34 (1st Cir. 2012). "The IDEA is a comprehensive statutory scheme" that "contains a panoply of procedural safeguards designed to assure that parents will have meaningful input into decisions that affect the education of children with special needs" and "provides parents with an opportunity to lodge formal complaints 'with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child.'" Frazier, 276 F.3d at 58 (quoting 20 U.S.C. § 1415(b)(6)). Massachusetts has implemented a statutory and regulatory scheme to comply with the IDEA, and the BSEA is the administrative agency that conducts impartial due process hearings regarding these complaints. See Mass. Gen. L. c. 71B, § 3; 603 C.M.R. § 28.08. Under the IDEA, plaintiffs must pursue available due process hearings prior to filing suit in federal court under the IDEA, as well as under the ADA or the Rehabilitation Act. 20 U.S.C. §§ 1415(i)(2)(A), 1415(l)[7]; see Fry v. Napoleon Cmty. Sch., ___ U.S. ___, 137 S. Ct. 743, 750 (2017); Frazier, 276 F.3d at 59. There are certain exceptions to the IDEA's exhaustion requirement, including if a plaintiff can show "that the administrative remedies afforded by the process are inadequate given the relief sought," Rose v. Yeaw, 214 F.3d 206, 210-

---

[7] The IDEA states: "Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." 20 U.S.C. § 1415(l) (internal citations omitted).

11 (1st Cir. 2000), "exhaustion would be futile or inadequate," <u>Frazier</u>, 276 F.3d at 59 (quoting

<u>Honig v. Doe</u>, 484 U.S. 305, 327 (1988)), or the lawsuit seeks a remedy that "is not for the denial

of a FAPE," <u>Fry</u>, 137 S. Ct. at 754.  "Nevertheless, the IDEA's exhaustion requirement remains

the general rule, and a party who seeks to invoke an exemption bears the burden of showing that

it applies." <u>Frazier</u>, 276 F.3d at 59.

Plaintiffs argue that their claims are not barred by the IDEA's exhaustion requirement.  D.

18 at 17.  Plaintiffs filed a hearing request before the BSEA in 2016.  D. 18 at 17; <u>see</u> D. 26-2 ¶

56.[8]  After Defendants conducted an evaluation and placed T.K. at Perkins, however, T.K.'s

parents reached an agreement with Defendants and withdrew their hearing request.  D. 26-2 ¶ 58.

Plaintiffs concede that the agreement "resolve[d] the very limited issues over which the BSEA has

jurisdiction." D. 18 at 18.  They contend, however, that the remedies available under the IDEA do

not include money damages, D. 18 at 17, which Plaintiffs request here, <u>see</u> D. 26-2 at 22.  The

First Circuit, however, addressed and rejected this argument in <u>Frazier</u>, 276 F.3d at 60-64.  In

<u>Frazier</u>, the plaintiff sought money damages through a § 1983 claim predicated on a violation of

the IDEA and argued that it did not need to exhaust administrative remedies because doing so

would be a waste of time.  <u>Id.</u> at 59-60.  The First Circuit held that exhaustion was still required,

explaining that "special benefits adhere to the exhaustion requirement in the IDEA context" and

that the text of the IDEA suggested such exhaustion was mandatory regardless of remedy sought.

<u>Id.</u> at 60-63.  Likewise, here, the fact that Plaintiffs seek a monetary remedy here does not exempt

them from the exhaustion requirement of the IDEA.  Plaintiffs have provided no further argument

---

[8] Plaintiffs attached certain documents related to these proceedings to its opposition papers, <u>see</u>
D. 18-1; D. 18-2; D. 18-3, which were neither attached to nor referenced in the complaint, D. 1, or
amended complaint, D. 26-2.  The Court, therefore, has not considered these documents for the
purposes of this motion.  See <u>Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co</u>, 267 F.3d 30, 33
(1st Cir. 2001).

that their ADA and Rehabilitation Act claims fall outside the scope of FAPE. Thus, Plaintiffs' withdrawal of their complaint before the BSEA bars them from pursuing these claims here.

The Court thus allows Defendants' motion to dismiss Plaintiffs' ADA and Rehabilitation Act claims.

### D.    Section 1983 (Count VI)

A § 1983 claim requires that Plaintiffs "allege that a defendant, acting under color of state law, acted in a way that deprived the plaintiff of rights secured by the U.S. Constitution or by federal law." Fournier, 851 F. Supp. 2d at 219. Plaintiffs claim that Defendants violated T.K.'s right to equal protection under the Fourteenth Amendment by subjecting her to "discrimination, sexual harassment, intimidation and sexual assaults based on her gender." D. 26-2 ¶¶ 100-01. The equal protection clause of the Fourteenth Amendment "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015). To state a claim under § 1983 based on alleged violations of the equal protection clause, Plaintiffs "must allege facts indicating that, 'compared with others *similarly situated*, [T.K.] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith to injure a person." Barrington Cove Ltd. P'ship v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001) (quoting Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995)) (emphasis in original). Ordinarily, this requires that the plaintiff "'identify his [or her] putative comparators' to make out a threshold case of disparate treatment." Doe v. Town of Stoughton, No. 12-cv-10467-PBS, 2013 WL 6498959, at *2 n.3 (D. Mass. Dec. 10, 2013) (quoting Harron v. Town of Franklin, 660 F.3d 531, 537 (1st Cir. 2011)).

Plaintiffs fail to allege any facts or argue that Defendants treated T.K. differently than other students. See, e.g., Harrington, 172 F. Supp. 3d at 346 (dismissing equal protection claim where

plaintiffs failed to allege that the student was treated differently than any other student); Schofield v. Clarke, 769 F. Supp. 2d 42, 48 (D. Mass. 2011). Plaintiffs allege simply that "T.K. has a constitutional right . . . to be free from discrimination, sexual harassment, intimidation and sexual assaults based on her gender." D. 26-2 ¶ 100. Although T.K. does have that right, without any factual allegations suggesting that such a right was violated here, Plaintiffs does not state a Fourteenth Amendment claim.

Plaintiffs argue for the first time in opposition that Defendants violated T.K.'s rights as guaranteed by the due process clause. D. 18 at 12-17. They contend that they have alleged violations of T.K.'s "rights to bodily integrity and to physical safety level while in the custody or responsibility of the Defendants."[9] D. 18 at 12. The Fourteenth Amendment "protects the right to bodily integrity" under the due process clause, which "is 'necessarily violated when a state actor sexually abuses a schoolchild.'" Fournier, 851 F. Supp. 2d at 219 (quoting Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 451-52 (5th Cir. 1994)). As to the safety guarantee, "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause,' unless the government is responsible for the deprivation." J.R. v. Gloria, 593 F.3d 73, 79 (1st Cir. 2010) (quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs., 489 U.S. 189, 197 (1989)). State defendants may be held liable "in situations where a state creates a 'special relationship' because of 'the limitation which [the state] has imposed on [an individual's] freedom to act on his own behalf,'" and the claim against these defendants involves "'conscience-shocking' conduct by state officials." Id. (quoting Rivera v. Rhode Island, 402 F.3d

---

[9] Plaintiffs' arguments in opposition to Defendants' motion focus on any qualified immunity defense Defendants might assert, see D. 18 at 12-17, but Defendants have not raised this defense, see D. 22 at 4. The Court thus declines to address qualified immunity here.

27, 34, 35-36 (1st Cir. 2005)). Plaintiffs argue that Defendants are liable under the "special relationship" theory.[10] D. 18 at 14.

Plaintiffs have failed to state a § 1983 claim on this basis here. First, Plaintiffs raise a due process clause claim for the first time in their motion papers; both the complaint and the amended complaint—which postdates these motion papers—fail to mention due process, and instead focus solely upon equal protection. See D. 1 ¶¶ 72, 74; D. 26-2 ¶¶ 99-104. Second, even if Plaintiffs had included a substantive due process claim in their pleadings, Plaintiffs have alleged no facts to support a claim based on "bodily integrity" here, where the alleged assault was committed by peers and not the Defendants or school administrators. Cf. Fournier, 851 F. Supp. 2d at 219-21. Third, courts who have addressed the question have held that non-custodial public high schools like Barnstable High School "do not maintain the type of custodial relationship over their students" that are considered "special relationships," Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 69 (D. Mass. 2015); see, e.g., Willhauck v. Town of Mansfield, 164 F. Supp. 2d 127, 133 (D. Mass. 2001); Hasenfus v. LaJeunesse, 175 F.3d 68, 71 (1st Cir. 1999), but even if the "special relationship" standard did apply, Plaintiffs have failed to allege any "conscience-shocking" conduct by Defendants. J.R., 593 F.3d at 80 (explaining that demonstrating "conscience-shocking" conduct is an "extremely high" burden, "requiring 'stunning' evidence of 'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even violations resulting from bad faith' to 'something more egregious and more extreme'" (quoting DePoutot v. Raffaelly, 424 F.3d 112, 119 (1st Cir. 2005))). The mere fact that Defendants permitted a student with some criminal history to attend the school is insufficient to state a substantive due process claim here.

---

[10] Plaintiffs also argue that Defendants are liable under the "state-created danger" theory, D. 18 at 14, but as the First Circuit has clearly stated, "this circuit has never . . . found [the theory] applicable." J.R., 593 F.3d at 79 n.3.

Additionally, Plaintiffs have failed to allege that any disparate treatment by school administrators was pursuant to a policy or custom put in place by the Town. See D. 12 at 14-15; Pembaur v. City of Cincinnati, 475 U.S. 469, 481 n.10 (1986); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). To prove a claim based upon custom, a plaintiff must demonstrate (1) that the custom is "attributable to the municipality," meaning "'so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice'"; and (2) that the custom was "the cause of and 'the moving force behind' the constitutional violation." Whitfield v. Melendez-Rivera, 431 F.3d 1, 13 (1st Cir. 2005) (quoting Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989)). Plaintiffs' sole mention of any policy cuts the other way: Plaintiffs allege that the school faculty's failure to report T.K.'s harassment violated the Town's own "Bullying Plan." D. 26-2 ¶ 63. Plaintiffs have failed to allege that T.K.'s harassment was part of any pattern or practice. See Stoughton, 2013 WL 6498959, at *4. The Court thus dismisses Plaintiffs' § 1983 claim against the Town.

The Court thus dismisses Plaintiffs' § 1983 claim as to all Defendants.

**VI. Conclusion**

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Defendants' motion to dismiss, D. 11, to the following extent: Plaintiffs' Title IX claim (Count I) may proceed against BPS. The Court dismisses with prejudice Plaintiffs' negligence-based claims (Counts II, III, VII, IX), ADA and Rehabilitation Act claims (Counts IV and V). These allegations, even as amended, lack specificity and do not clearly indicate that the harassment itself was because of her sex, suggesting that this harassment alone would fall short of forming the basis of a Title IX claim. See Harrington v. City of Attleboro, 172 F. Supp. 3d 337, 344 (D. Mass. 2016). § 1983

claim (Count VI) and intentional infliction of emotional distress claim against BPS and the Town (Count VIII).  That is, the only claim that may proceed is Plaintiffs' Title IX claim as to BPS.

Plaintiffs' motion to amend their complaint, D. 23, is ALLOWED, but only as to the claim not dismissed in this Memorandum and Order.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge