UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
CIVIL  ACTION # 17-CV-11781DJC

_____

T. K. with and through her parents
G.K and V.K, Plaintiffs

V.
Barnstable Public Schools

_____


### Second Amended Complaint and Demand for Jury Trial

1.      This is an action seeking redress for violation of civil rights, and severe physical,

emotional and psychological harm caused by the Barnstable Public Schools. The defendant at all

times acted intentionally and/or with deliberate indifference in their failure to properly supervise

and oversee students, as well as their failure to properly investigate disclosures of T.K.'s

significant emotional injury, sexual assaults and rape by a known juvenile criminal on school

property, Falvio Desantos, who raped and bullied T.K. T.K. was harassed and bullied, by

students, on a regular basis while in 8th grade when the students learned of the rape and sexual

assaults/  The defendant further acted intentionally and/or with deliberate indifference in their

failure to properly and adequately respond to the disclosure of T.K.'s, harassment, bullying, and

their failure to provide services to her to address the educational, social and emotional needs she

suffered as a result of the rape, and non-action to keep T. K. free from harm socially,

emotionally, sexually and physically and the failure to provide appropriate services and support

pursuant to  Title IX, 20 U.S.C. section 1681.


2.      The plaintiffs seek relief pursuant to Title IX, 20 U.S.C. section 1681.

### PARTIES

3.      The plaintiff, G.K, is an adult resident of Barnstable, Massachusetts. G.K. is the

Father of the minor T.K, and brings this action individually and as the next friend of T.K.

4.      The plaintiff, V.K., is an adult resident of Barnstable, Massachusetts. V.K is the

mother of the minor child, T.K, and brings this action individually and as the next friend of

T.K.

5.      During all relevant periods, the plaintiff, T.K. was a minor student attending the

Barnstable Public Schools and a resident of Barnstable, Massachusetts.

6.      The defendant, Barnstable Public Schools is the civil entity in the Town of

Barnstable. T.K. was a student in the Barnstable Public Schools during all of the times relevant

to this action. The Barnstable School District ("District") is in recipient of federal financial

assistance, including federal financial assistance provided to the District's schools and

specialized education programs.


## JURISDICTION AND VENUE

7.      Jurisdiction of this court is invoked under the provisions of Sections 1331 and

1343(3) of Title 28 and Title IX, 20 U.S.C. section 1681

8.      Venue properly lies in this judicial district pursuant to Section 1391 of Title 28

of The United States Code as the claims arose in this judicial district.

## STATEMENT  OF  FACTS

9.      Prior to the 2014-2015 school year, in the Barnstable Public Schools, the Barnstable

School Department did merge the Barnstable Public Schools, 8th grade, into the Barnstable High

School.

10.     T.K. entered her 8th grade school year, in September 2014, and did intermingle with her classmates as well as with the older high school students.

11.     One of the older students T.K. did intermingle with was a 10th grade student by the name of Falvio Desantos.

12.     Falvio Desantos had a long history of criminal behavior both in and out of school and at the start of the 2014 school year was on criminal probation for his criminal behavior and crimes through the Barnstable Juvenile Court.

13.     Given Falvio Desantos's  (Falvio) significant criminal history, both in the community and in the Barnstable public schools, school staff at Barnstable High School, including Principal Patrick Clark were fully aware of Falvio's criminal charges by the Barnstable High School's police officer Reid Hall on an ongoing basis and school staff did attend various criminal juvenile hearings in the Barnstable Juvenile Court.

14.     Officer Reid Hall is and was assigned to Barnstable High School as the school resource officer by Barnstable Police Department, where he was fully employed.

15.     Officer Reid Hall had and still has an office, in the Barnstable High School, so he can talk and meet with students and staff during the school day on a full time basis.

16.     The Barnstable School Administration and high school staff chose to allow Falvio to stay, in Barnstable High School, while he was on probation for his criminal acts and by doing so did knowingly endanger the students attending Barnstable High School even though the Barnstable High School staff had the authority and ability to place Falvio in an alternative school program away from the Barnstable's Public Schools.

17.     T.K. was 13 years old and a very pretty young lady, at the start of her 8th grade year in Barnstable High School, and stood out given her sweet behavior and very good appearance.

18.     As T.K. was a standout young lady, Falvio took immediate notice of T.K. during the first month of her 8th grade year as did other older students.

19.     On or about November 1, 2014, T.K. was raped by Falvio in the Barnstable high school.

20.     The rape of T.K. by Falvio took place, in a stairwell, in the Barnstable High School, where the rape could not be observed by school staff or students.

21.     Falvio did drug T.K. at the time of the rape and the sexual assault and the rape lasted for an extended period of time.

22.     The rape of T.K. by Falvio did cause T.K. severe emotional trauma on an ongoing basis, during the 2014- 2015 school year and for and extended time there after.

23.     T.K. had an immediate change in behavior due to the emotional trauma of the rape and started to cut herself daily.

24.     Given the immediate change in behavior, T.K. was pressed by her girlfriends as what was happened that caused T.K.'s emotional and behavioral changes.

25.     Given T.K.'s emotional trauma, Falvio continued to press T.K. for sex and did force her to take drugs to which she became addicted, to her ongoing detriment.

26.     Falvio was a known drug dealer to the Barnstable High School staff and police department and regularly sold drugs to fellow students in the high school.  Principal Clark was

fully aware of Falvio's actions, behaviors, drug dealing, and criminal acts and was personally responsible for Falvio's attendance in the Barnstable High School.

27.     Barnstable Public School's records show that T.K. had school attendance issues at an increasing rate while in 8th grade as well as an increasing bad behavior due to T.K.'s trauma, fear of other students, including Falvio, and her trauma of how she was being perceived by school staff and students.

28.     Due to the trauma suffered by the rape and harassment, T.K. started to use alcohol and marijuana daily during her 8th grade year both in and out of school.

29.     T.K was regularly bulled on an ongoing basis, by high school students, slapped by girls students, and had various items stolen including her shoes by girls, who grabbed them off her feet, due to T.K.'s severe change in emotion, behavior, and the loss of her sweet personality and she was subject to (1) severe, pervasive, and objectively offensive sexual harassment by a school peers, (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits (3) and knew of the ongoing harassment, (4) in its programs, classes and  activities and (5) school staff were deliberately indifferent to the harassment such that its response to the rape and harassment is clearly unreasonable in light of the known circumstances.

30.     The Barnstable High School administration staff and Barnstable police officer Reid Hall, never reported any of the criminal actions inflicted upon T.K. by students in the high school to cause a criminal charge to be pressed against any person including but not limited to Falvio Desantos for continuous sexual assaults upon T.K.

31.     T.K.'s parents, G.K. and V.K., worked together in the hair salon business and owned a business in Boston and in Hyannis, at the start of the 2014 school year.

32.     The parents of T.K. were called by T.K.'s high school house master, Melissa Collins, who during the Spring of 2015 school year, informed T.K's parents of the incidents with Falvio and the other students and that she had attended various school meetings regarding T.K.

33.     Given the ongoing and increasing emotional and behavior issues that T.K. was having during the spring of her 2014-2015 school year, G.K. and V.K. had to leave work on a regular basis early in the day to try to deal with T.K.'s increasingly emotional problems and dysfunction reported to them by school staff.

34.     Officer Reed Hall, after the meeting, T.K.'s parents had with Melissa Collins, set up a specialized interview with T.K. regarding her rapes and emotional issues at the Barnstable County Juvenile Center, in Barnstable.

35.     The specialized interview at the Barnstable County Juvenile Center in Barnstable, T.K. could not open up about the causes of the trauma she was suffering from and cried to the interviewer but would not articulate about the trauma she was suffering as she was terrified of the assaults upon her in the Barnstable High School by Falvio.

36.     Given the disclosure originally to Melissa Collins, the parents of T.K. regularly called school staff, during the spring of 2016, as to T.K.'s behavior and their concerns for T.K.'s trauma and needs.  The parents called the vice principal, Melissa Collins, and Kari Hoffman, the high school special education coordinator seeking both information of T.K.'s ongoing issues and her past issues however school staff did not discuss or share any ongoing issues as to peer to-

peer harassment and their failure to properly intervene and these actions and non-actions  clearly demonstrated their deliberate indifference which did subject T.K to ongoing and continuous harassment.

37.     Any claim that Barnstable School Administrators did not have actual knowledge of the issues and needs of T.K. is clear error as the sexual assaults upon T.K. were reported to school staff by students and staff as T.K. was emotionally dysfunctional and suffering sever emotional trauma as the incidents were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to her scholastic programs and activities.

38.     T.K. was kept in the Barnstable High School, for the balance of her 8th grade year, where she suffered ongoing harassment and intimidation from her classmates as the rape and drug inducement became well known to the whole student body.  Barnstable provided no safety net for T.K. or a comprehensive treatment plan of her rapes at the high school by the known sex offender Falvio Desantos

39.     School staff knew that its measures proved inadequate, and thereby required to take further steps to avoid new liability or trauma to T.K. but chooses not to take such action. Clearly as Barnstable High school staff had actual knowledge that its efforts to remediate were ineffective, and it continued to use those same methods to no avail, such a school district has failed to act reasonably in light of the known circumstances.

40.     Principal Clark was fully aware of the incidents involving T.K. and Falvio as well as T.K.'s ongoing harassment by classmates and other students and as school principal had full and complete authority to keep T.K. safe but did nothing to keep T.K. safe and free from sexual propositions, name calling, and rejections which did occur in school and via social media, in person, and via cell phone.

42.     School records and family reports from T.K.'s eight grade identified an observable shift in T.K.'s hyper focus on social interactions and peer dynamics which began to severely impact

her ability to progress academically.  The action and non actions of the Barnstable public schools and school staff did knowingly act negligently and did by this non action infliction of emotional distress through their gross negligence impose sever emotional distress and was a direct causation of the physical harm and emotional harm suffered by T.K. and clearly any reasonable child or person would have suffered emotional distress under like circumstances of her rape and ongoing harassment in the Barnstable High school.

43.     School records also show declining attendance and severe conduct issues starting in the 8th grade through the end of the school year due to T.K.'s trauma, fear of the other students and the perpetrator of the rape and how she was being perceived by school staff and students.

44.     At the end of 8th grade, at a school " special education team" meeting, the parents requested a summer program and support for T.K. but were denied their request which forced the parents to keep T.K. with them at work as well as in their physical custody 24 hours a day due to her sever drug and emotional issues.

45.     Given the emotional trauma and behaviors escalations of T.K., the parents went to the Barnstable School District administration, on numerous occasions, seeking special services to deal with T.K.'s severe emotional trauma and disruptive behavior which Barnstable staff did deny however during the 9th grade year, Barnstable did place T.K. in a day program for behavior disturbed and academically impaired children in Plymouth, the Plymouth Area Collaborative.

46.    The Plymouth Area Collaborative has no services or programs past 2:30 in the afternoon Monday through Friday therefore there was no support or help available to T.K., after 2:30, and she did continue to spiral down emotionally.

47.     Due to the ongoing trauma, T.K. did poorly at Pilgrim Academy and continued to run away and use drugs which Barnstable was aware of but did nothing to support or assist T.K.'s drug issues, behavior issues or her emotional trauma.

48.     G.K. and V.K., for the school year 2016-2017, the parents were forced to leave work early to be home when T.K. did arrive home daily at 3:00 approximately, to keep her safe, as Barnstable refused to provide any services after 2:30 on school days.

49.     The parents ultimately were forced into bankruptcy due to the loss of income due to being forced to leave work early to care for T.K. as Barnstable refused to put in place an extended school day to provide any services for T.K.

53.     The lack of services and T.K.'s continued decline forced the parents to seek other options.

54.     The parents went to juvenile court, in Barnstable, and filed a CRAWL previously called a CHINS seeking help and due to the severity of  T.K.'s issues and Barnstable Juvenile Court placed her at GRACE House, a 90 day drug treatment center immediately.

55.     T.K. completed the 90 day residential drug treatment program, at Grace House, and Grace House provided a written recommendation along with T.K.'s personal therapist that she have a residential therapeutic program due to her multi-level issues but Barnstable refused any residential placement and did no evaluation themselves.

56.     Given Barnstable's refusal to provide the required 24 hour services and that T.K. was dumped, at her parent's home, hours before the parents could be home from work, Barnstable knowingly endangering T.K. was left alone for some 5 hours daily and Barnstable did nothing to treat her severe trauma.  Given the lack of services, the family filed a for a hearing, at the  BSEA, seeking a residential therapeutic program.

57.     On or about October 10, 2016, the Barnstable School System agreed to an evaluation at the Dr. Franklin Perkins School (Perkins) which is a therapeutic residential program.

58.     A Team meeting was held, at Perkins School, on March 30, 2017, to review the results of the extended evaluations. The results of the evaluation and T.K.'s placement, at Perkins, were the clear basis for resolution of the parent's issues presented before the BSEA and Barnstable did off a settlement agreement as to all issues before the BSEA, offering a therapeutic residential placement which did require the withdrawal of the BSEA Hearing Request as there was no remaining issues before the BSEA.

59.     The programs, at Perkins, did provide for substantial improvement in T.K.'s severe emotional trauma and did allow for T.K.'s return home, in the early summer of 2017.

60.     As it was the parent's position given the recommendations of various service providers, not to send T.K. back to Barnstable, given her severe trauma suffered, in Barnstable High School, the Barnstable School Department sought out and found that the Monamoy Regional High School, in Harwich, would accept T.K.

61.     The acceptance of T.K., at Monamoy, took considerable work and interviews of T.K. so she could start, at Monamoy in September of 2017 where she is doing well.

62.     It is clear that when Barnstable learned of the rape and emotional trauma of T.K, the District failed in their mandated duty to determine that T.K. was  (1) was a "qualified individual with a disability; (2) was  excluded from participation in and denied the benefits of the school's specialized  services, programs or activities, and was otherwise discriminated against; and (3) that such exclusion and the discrimination was by reason of her sexual assault crated disability. It was clear from T.K.'s lack of ability to attend school and function and that the injury was affecting her ability to function in the regular school setting.  The District failed to put in place

any services at a reasonable time from the rape  to deal with the clear effects of T.A.'s injury

even when requested by her treating psychologist and parents.  The District for the balance of

2014 school year ignored her needs to T.K.'s detriment.  The District clearly displayed ongoing

deliberate indifference, animus, gross misjudgment, and lack of concern for T.A.'s well-being.

A school district, in Massachusetts, owes the student under their care an absolute duty to provide

all children an education so they have the ability to reach their full potential but clearly

Barnstable ignored that duty as to T.K. and her detriment.

64.     The neglect of T.K., by the District staff, has caused her to suffer severe emotional

distress and trauma as well as physical distress.  The damages which T.K. and her parents have

suffered are the direct and proximate result of actions and inactions of theBarnstable Public

Schools, by their failure to supervise or negligent supervision of school staff and students and for

their knowing acceptance and allowing the ongoing harassment, bullying, assaulting, and beating

and rape of T.K., their knowingly institution of a grossly negligent and ineffective education for

T.K., and the arbitrary, capricious removal of programs and services to which T.K was entitled to

her detriment. The actions and non actions of the Barnstable public schools was  Extreme and

outrageous conduct goes beyond all possible bounds of decency, and

is regarded as atrocious, and utterly intolerable in a civilized community.

65.     The parents of T.K., as a result of the mistreatment of their daughter, lack of proper

services and protections for their daughter, and their ongoing struggle with the District to put

even the basic protections and services in place has caused them to suffer emotional and

financial distress, costing them thousands of dollars, in medical and educational services, which

were required for T.K. and did cause them to lose their Boston office and to file for bankruptcy.

Further, these acts of discrimination are a clear violation of the rights of individuals with

disabilities under Title IX.

66.    The Defendants, based on their actions and non –actions, were clearly arbitrary and

capricious that extends beyond mere violations of the state law and were egregious and extreme

as not only the services owed to the plaintiff but to all children under their authority.

68.    The actions and non-actions of the Barnstable High School's conduct was knowingly

extreme and  outrageous as to the treatment of  T.K. and her parents, and did inflict emotional

distress, trauma and financial loss and should have known or intended, or knew that their

conduct would  cause emotional distress, and that their conduct caused emotional distress to the

detriment of T.K. and her parents. The actions and non actions of the Barnstable Public schools

are clearly Extreme and outrageous conduct goes beyond all possible bounds of decency, and are

regarded as atrocious, and utterly intolerable in a civilized community.

69.    T.K. was clearly subject to severe pervasive and objectively offensive sexual harassment

and assaults, by school peers, as such the rape and sexual assaults, harassment, intimidations

and trauma deprived, T.K, of educational benefits and opportunity while, in her 8th grade, and

Defendants, knew of the acts of Falvio Desantos, and other students upon T.K. which took

place, at Barnstable High School, and it is clear that named Defendant were deliberately

indifferent to the sexual assault, harassment, and emotional trauma suffered by T.K. such that

Defendant's lack of response to the trauma and rape suffered by T.K. was clearly unreasonable

in light of the known circumstances.

## COUNT  I
## VIOLATION  OF  TITLE  IX 20 USC Section 1681
Against the Barnstable Public Schools

70.     The plaintiffs incorporates each and every allegation and averment set forth in paragraphs 1 through 69 as fully set forth herein.

71.     Under Title IX and 34 C.F.R. 106.8 public schools must "adopt and publish grievance procedures providing for prompt and equitable resolution of students and employee complaints alleging any action which would be prohibited by this part"

72.     On or about November 2014, the Barnstable public schools and the town of Barnstable by and through its employees and agents and all departments new that T.K. was raped and assaulted in the Barnstable high school by Falvio Desantos a known criminal.

73.     During the 2014- 2015 school year, all defendants, in town of Barnstable learned that Falvio Desantos on multiple occasions sexually harassed, intimidated, introduced drug use, humiliated T.K. in the Barnstable high school on an ongoing and regular basis.

74.     The sexual harassment perpetrated on T.K. by Falvio Desantos was severe, pervasive and objectively offensive and caused T.K. to be deprived of educational opportunities and/or benefits.

75.     Defendant, in their official capacities, in violation of Title IX, 20 USC Section 1681 remained deliberately indifferent to the rape, sexual assaults, intimidation, emotional trauma, and psychological trauma as a direct and proximate result of such violations.  Such actions and non actions did act far outside the known and required practices mandated by the United States Office for civil Rights.

76.     The defendant, the Barnstable Public Schools failed to remove Falvio Desantos, from the high school, and/or failed to limit his ability to interact with T.K; failed to adequately supervise Falvio Desantos; failed to adequately monitor Falvio Desantos; and failed to initiate any reasonable measures to protect T.K. from Falvio Desantos.

77.     As a direct and proximate result of such violation, the Defendant acted with deliberate indifference to the harassment, sexual assault, intimidation, such that it's lack of response was clearly unreasonable in light of the known circumstances and did cause T.K. physical injuries, indignities, humiliations, severe emotional distress, mental anguish, and invasion of body integrity.

78.     As a direct and proximate result of such violation, the Defendant acted with deliberate indifference to the harassment, sexual assault, intimidation, such that it's lack of response was clearly unreasonable in light of the known circumstances and did cause T.K. physical injuries, indignities, humiliations, severe emotional distress, mental anguish, and invasion of body integrity and did cause her parents G.K and V.K. humiliations, severe emotional distress, mental anguish, and financial destruction and bankruptcy.

78.     The Defendant left T.K. vulnerable for further sexual exploitation, harassment, intimidation, embarrassment and was a direct and proximate cause of the subsequent acts of sexual assault, intimidation, harassment and embarrassment committed by Falvio Desantos upon T.K.

## **REQUESTED  RELIEF**

WHEREFORE the plaintiffs claim judgment against the named defendants and each of them jointly and severally as follows:

A.  Compensatory damages in the amount warranted by the evidence at trial;

B.  Punitive damages in the amount warranted by the evidence at trial;

C.  Reasonable attorney's fees and costs incurred in this action;

D.  Such other relief as permitted by statute and as this Court shall consider to be fair and equitable.

## JURY DEMAND

The parties hereby demand a jury on all claims and issues so triable.


Respectfully Submitted,

Plaintiffs, T.K. and G.K., and V.K.

By Their Attorney

s/s  Michael W. Turner
Michael W. Turner BBO #565820
242 Wareham Road
P.O.  Box 910
Marion Ma.02738
508-748-2362
Fax 508-748-8636


DATED:  11/5/2018




**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered participants on 11/5/ 2018

/s/ Michael W. Turner
Michael W. Turner