UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| T.K., with and through her parents, G.K. and V.K., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| TOWN OF BARNSTABLE, BARNSTABLE PUBLIC SCHOOLS, PATRICK CLARK and MEG MAYO-BROWN, | ) ) ) ) ) No. 17-cv-11781-DJC |
| Defendants. | ) ) ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                        **June 15, 2020**

### I.    Introduction

Plaintiff T.K. ("T.K."), a minor, filing with and through her parents, G.K. ("G.K.") and V.K. ("V.K.") (collectively, "Plaintiffs"), filed this lawsuit against various defendants, including the Barnstable Public Schools ("BPS"), for various claims, including violation of Title IX, 20 U.S.C. § 1681. D. 1. After this Court's decision as to Defendants' earlier motion to dismiss, the only claim that remains is the Title IX claim against BPS (Count I). D. 28. BPS has now moved for summary judgment as to this claim. D. 54. For the reasons stated below, the Court ALLOWS BPS's motion for summary judgment, D. 54.

### II.    Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp.,

1

217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997).

## III.   Factual Background

The following facts are derived from BPS's statement of undisputed material facts, D. 56, Plaintiffs' response to same, D. 61, and other supporting documents and are undisputed unless otherwise noted. In considering these documents, however, the Court notes that much of Plaintiffs' response to BPS's statement of undisputed material facts fails to comply with Local Rule 56.1, which requires that the statement of material facts by a party opposing summary judgment include citations to the record. See Local Rule 56.1. Many of the facts included in Plaintiffs' response are unsupported and thus do not comply with Local Rule 56.1. See id.; S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., 183 F. Supp. 3d 197, 236 (D. Mass. 2016) (noting that "a party's omission of citations to the record leaves no doubt about its violation of the rule") (citing

Zimmerman v. Puccio, 613 F.3d 60, 63 (1st Cir. 2010)).  As such, in considering Plaintiffs' response to BPS's statement of material facts, the Court declines to accept any facts or alleged factual disputes that are not supported by required citations.

Plaintiff T.K. was an eighth-grade student at BPS during the 2014-2015 school year.  D. 61 ¶ 1.  T.K. was assigned to "House B" at BPS, whose "Housemaster" was Melissa Collins ("Collins").  D. 61 ¶ 2.  Collins's role as Housemaster was to oversee attendance and discipline for the students assigned to House B.  D. 61 ¶ 2.  On November 10, 2014, Collins held a meeting with G.K. and V.K. to discuss concerns about T.K.'s behavior after she had gone missing from her home the previous evening.  D. 61 ¶¶ 3, 4.  During the meeting, another student's mother entered and stated that T.K. had been using drugs and engaging in sexual relations and that she had previously had sex with another BPS student on campus.  D. 61 ¶ 4.

Following this meeting, Collins brought Plaintiffs to meet with Reid Hall ("Hall"), the school resource officer at BPS and a Barnstable police detective.  D. 61 ¶ 5.  They agreed that T.K. would undergo a forensic interview at Children's Cove, an advocacy organization for child abuse victims, as well as a medical assessment at Cape Cod Hospital.  D. 61 ¶ 5.  During the interview at Children's Cove and the examination at Cape Cod Hospital, T.K. denied that she had been sexually assaulted and she would not consent to having a rape kit done at the hospital.  D. 61 ¶ 6. Throughout the 2014-2015 school year, T.K. denied both to her parents and to BPS officials that she had been sexually assaulted.  D. 61 ¶ 7.  G.K. and V.K. participated in numerous meetings with BPS officials regarding T.K. throughout the school year.  D. 61 ¶ 9.  T.K. did not admit to her parents and BPS officials that she had been sexually assaulted by a classmate, Flavio De Santos ("De Santos"), on campus until June 15, 2015, when she allowed her therapist to disclose the incident during a meeting with school officials and T.K.'s parents.  D. 61 ¶ 28.  During that

meeting, T.K.'s therapist asked to address the group and stated that T.K. had shared that she had been raped by De Santos and had given the therapist permission to disclose this during the meeting. D. 61 ¶ 28.  In their depositions, both parents acknowledged that this was the first time that T.K. admitted that De Santos had sexually assaulted her.  D. 57-2 at 41 (T.K.'s father testified that this meeting was the "first time" that T.K. acknowledged she had been sexually assaulted); D. 57-3 at 22 (T.K.'s mother testified to the same).

T.K. testified that De Santos did not harass her again after the assault.[1]  D. 61 ¶ 11.  T.K. alleges, however, that, during the school year, she experienced bullying online by other, anonymous BHS students.  D. 61 ¶ 12.  Plaintiffs do not recall informing Collins or any other school official about any incidents of online bullying.  D. 61 ¶ 13.  T.K. also claims that she experienced bullying at BHS during the school year, including numerous students calling her degrading names.  D. 61 ¶ 14.  At some point during the school year, BPS assigned a chaperone to accompany T.K. between classes.  D. 61 ¶ 16.  T.K. confirmed that, when the chaperone was with her, the bullying that occurred in the hallways stopped.  D. 61 ¶ 17.

On November 24, 2014, T.K. informed Collins that a student, a former female friend of T.K., had approached her in the hallway and slapped her.  D. 61 ¶ 18.  T.K. assumed that this assault was related to the sexual assault by De Santos but testified that she was not aware of why the student assaulted her.  D. 61 ¶ 19.  Collins suspended the student for two days after T.K. reported the incident and the student did not harass T.K. again.  D. 61 ¶ 20.  On March 16, 2015, T.K. reported that someone had stolen a hat and money from her bag at school.  D. 61 ¶ 21.  T.K. is not aware of who stole these items or why they were stolen.  D. 61 ¶ 22.  The school resource

---

[1] Plaintiffs now assert that De Santos contacted T.K. numerous times after the incident, including threatening T.K.'s father.  D. 61 ¶ 11.  In making this assertion, however, Plaintiffs do not cite to any evidence in the record for this assertion.  Id.

officer, Hall, investigated and was unable to identify who had stolen the items. D. 61 ¶ 23. On April 10, 2015, T.K. reported to Collins that a former female friend had approached her in the cafeteria and forcibly removed T.K.'s shoes, which had previously been given to T.K. by the friend. D. 61 ¶ 24. T.K. believed that this incident was related to the sexual assault because she states that everyone in the school became aware of the sexual assault as De Santos had bragged about it; however, there is no evidence in the record to support the assertion that this incident was related to the sexual assault. D. 61 ¶ 25. Collins suspended the student who had forcibly removed T.K.'s shoes and T.K. did not recall the student harassing her again following the incident. D. 61 ¶ 26.

On June 12, 2015, G.K. and V.K. informed Collins that they had decided to place T.K. in an adolescent drug treatment facility. D. 61 ¶ 27. T.K. did not return to BPS and attended the Pilgrim Academy in Plymouth, Massachusetts for part of her ninth-grade year. D. 61 ¶ 31. T.K. was then placed in a therapeutic residential program for part of her ninth-grade year and for her tenth-grade year. D. 61 ¶ 33. T.K. was then able to attend another public high school for the eleventh and twelfth grades and is currently attending junior college. D. 61 ¶ 34.

**IV.     Procedural History**

Plaintiffs instituted this action on September 18, 2017. D. 1. The Court dismissed all claims except for the remaining Title IX claim against BPS. D. 28. BPS has now moved for summary judgment on this claim. D. 54. The Court heard the parties on the pending motion and took the matter under advisement. D. 70.

**V.      Discussion**

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although "Title IX's express means of enforcement [is] by administrative agencies," Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 288 (1998), the statute implies a private right of action entitling plaintiffs to injunctive relief and damages for sexual harassment under certain limited circumstances, Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 255 (2009); Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 639-40 (1999). To state a claim under Title IX for "student-on-student sexual harassment," a plaintiff must show: "(1) that he or she was subject to 'severe, pervasive, and objectively offensive' sexual harassment by a school peer, . . . (2) that the harassment caused the plaintiff to be deprived of educational opportunities or benefits . . . (3) [and that the funding recipient] knew of the harassment, (4) in its programs or activities and (5) it was deliberately indifferent to the harassment such that its response (or lack thereof) is clearly unreasonable in light of the known circumstances." Porto v. Town of Tewksbury, 488 F.3d 67, 72-73 (1st Cir. 2007); see Davis, 526 U.S. at 644 (explaining that a school can be liable for peer-to-peer harassment only if "its deliberate indifference 'subjects' its students to harassment"). "In the educational setting, a school might be found deliberately indifferent 'where it had notice of the sexual harassment, and either did nothing or failed to take additional reasonable measures after it learned that its initial remedies were ineffective.'" Turley v. McKenzie, 14-cv-14755-LTS, 2018 WL 314814, at *10 (D. Mass. Jan. 5, 2018) (quoting Porto, 488 F. 3d at 74).

### A. Failure to Protect T.K. from Sexual Assault

Plaintiffs appear to argue in response to this motion that BPS is liable for the sexual assault perpetrated by De Santos on T.K. because BPS had knowledge that De Santos had a criminal history, but allowed him to remain at BPS. D. 62 at 5. The Court addressed this issue in its order

on the motion to dismiss, noting that Plaintiffs' Title IX claim focuses only on Defendants' actions in response after the alleged rape and not liability for the rape.  See D. 28 at 7.

Even so, there is no indication that De Santos's prior criminal record put BPS on notice that he posed a risk to BPS students, particularly a risk of sex-based harassment.  Nor have Plaintiffs identified evidence in the record indicating the nature of De Santos's prior criminal history.  In Turley, the Court granted summary judgment in favor of a defendant where complaints about prior hazing incidents failed to put defendant on notice that cadets at a police academy were at risk of "sexual harassment severe enough to compromise [their] educational opportunities." Turley, 2018 WL 314814, at *10 (internal quotations omitted) (alteration in original) (stating that "prior complaints must put the institution on notice that students are at risk of experiencing harassment based on sex").  Here, there are no facts in the record, and Plaintiffs do not allege, that BPS was aware of any information regarding De Santos's prior criminal record that would put them on notice that students were at risk of sexual assault.  Without more, BPS is not liable under Title IX for the assault suffered by T.K.[2]

### B. Response to Sexual Assault and Ongoing Harassment

BPS could be liable if its response to the sexual assault and subsequent harassment experienced by T.K. demonstrated deliberate indifference.  See Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 172-73 (1st Cir. 2007) (stating that "a single instance of peer-on-peer harassment theoretically might form a basis for Title IX liability if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined

---

[2] Plaintiffs also note that De Santos was sent to jail during March of T.K.'s eighth-grade year at BPS for criminal acts unrelated to the assault against T.K.  D. 62 at 5.  This fact does not support BPS's liability for the sexual assault under Title IX as this occurred after the sexual assault and, again, there is no indication in this record as to the nature of the criminal acts that led to De Santos's later criminal charge.

systemic effect of denying access to a scholastic program or activity"). Regarding BPS's response to the sexual assault, Plaintiffs allege that (1) BPS did not provide T.K. "appropriate therapy or services" to address the trauma caused by the sexual assault and ensuing harassment; (2) BPS failed to adequately respond to online bullying of T.K. by anonymous BPS students; (3) BPS failed to adequately respond to bullying that occurred in school by other students; (4) BPS failed to adequately respond to an incident in which another student slapped T.K. in the hallway of the school; (5) BPS did not adequately respond to an incident in which items were stolen from T.K. and (6) BPS failed to adequately respond to an incident whereby another student forcibly removed T.K.'s shoes in the cafeteria at the school. See D. 62 at 5-6. Plaintiffs argue that these actions constituted sex-based harassment and that BPS is liable based on its deliberate indifference to the harassment. See D. 62 at 6. For the reasons discussed below, Plaintiffs fail to meet the standard for Title IX liability as to each of these allegations against BPS.

### 1. Actual Knowledge

For BPS to be liable under Title IX for failing to adequately respond to the sexual assault and subsequent harassment, Plaintiff must first show that BPS had actual knowledge of the sexual assault. Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011); Bloomer v. Becker Coll., 09-cv-11342-FDS, 2010 WL 3221969, at *4 (D. Mass. Aug. 13, 2010) (noting that, "to succeed under a Title IX claim, a plaintiff must show that a school official authorized to take corrective action had 'actual knowledge' of the sexual harassment and either failed to act or exhibited deliberate indifference to it"). Here, BPS officials learned that T.K. and De Santos may have engaged in sexual activities on campus when the parent of another student informed them that T.K. was engaging in drug use and sexual relations, including on campus, during a meeting with T.K.'s parents. D. 61 ¶ 4. There is no indication, however, that this parent indicated during that meeting

that De Santos had assaulted T.K. See D. 61 ¶ 4; 57-4 at 1 (Collins's notes of the meeting stating that the parent informed her and T.K.'s parents that T.K. "had sex with [De Santos]" at the school). Plaintiffs do not dispute that, following this meeting with Collins, T.K. continually denied that she had been sexually assaulted. D. 61 ¶ 7. Also, as previously attested by Plaintiffs, T.K. first admitted to her parents and school officials that De Santos had sexually assaulted her in a meeting held months later on June 15, 2015, during which T.K.'s therapist disclosed the details of the sexual assault with T.K.'s permission.[3] D. 61 ¶ 28.

Plaintiffs also appear to argue that BPS should have been aware of the sexual assault because De Santos "bragged" to other students and other students at BPS were talking about it. D. 62 at 7. Plaintiffs cite to no evidence in the record to support this assertion and, further, T.K. admitted during her deposition that De Santos bragged about having a sexual encounter with her, but not that he had assaulted her. D. 57-1 at 29. Based on these facts, Plaintiff cannot show that

---

[3] In an affidavit submitted with Plaintiffs' opposition to the summary judgment motion, V.K. stated that T.K. informed her of the sexual assault "a few days after the November meeting." D. 61-3 ¶ 13. This latter-day statement by V.K. contravenes her earlier sworn testimony and the deposition testimony from T.K. and G.K. in which they stated that T.K. did not share that she had been sexually assaulted until the June 2015 meeting. D. 65 at 5 & n.3 (citing respective deposition transcripts). "When an interested witness has given clear answers to unambiguous questions [at deposition], [s]he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." Flaherty v. Entergy Nuclear Operations, Inc., 946 F.3d 41, 50 (1st Cir. 2019) (quoting Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 30 (1st Cir. 2019) (alteration in original). V.K. has failed to offer a satisfactory explanation for her change in testimony from the deposition to the affidavit. Notably, neither V.K. nor her counsel, who was present at the deposition, attempted to correct the deposition testimony at any time prior to the filing of the affidavit in opposition to summary judgment. Id. at 51 (finding that the district court did not abuse its discretion in striking statements in an affidavit that contradicted prior deposition testimony, noting that the party did not "'note any change or correction to [his] testimony and the reason therefor' upon receiving the deposition transcript" and only claimed confusion once a summary judgment motion was filed) (quoting Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006)) (alteration in original). This Court, therefore, strikes those statements in Plaintiffs' affidavits that directly contradict statements Plaintiffs made during their depositions.

BPS had "actual knowledge" of the sexual assault. See Doe v. Bradshaw, 203 F. Supp. 3d 168, 185 (D. Mass. 2016) (considering a Title IX claim based on sexual harassment and stating that "rumors did not rise to the level of actual knowledge"). In Bradshaw, the court, in finding that the school lacked actual knowledge, noted that "the case law is clear that only reliable and unambiguous reports have been deemed sufficient to provide actual knowledge." Id. at 185-86 (citing J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1-29, 397 Fed. App'x 445, 452-53 (10th Cir. 2010); Doe v. Sch. Admin. Dist. No. 19, 66 F. Supp. 2d 57, 63 (D. Me. 1999)). Based on this record, Plaintiff cannot show that BPS had actual knowledge of the sexual assault prior to the June 2015 meeting, which occurred after T.K.'s parents removed her from BPS.

The same is true as to some of the other incidents of sex-based harassment that T.K. alleges. Regarding the online bullying, both T.K. and her parents testified that they do not recall notifying any BPS officials that T.K. was experiencing online bullying. See D. 61 ¶¶ 12-13. Collins also stated that neither T.K. nor her parents informed her that T.K. was experiencing online bullying. D. 57-5 ¶ 12. Additionally, BPS claims that they did not have actual knowledge of the in-school bullying, which is supported by testimony from T.K. in which she stated that she did not recall reporting the bullying to Collins or any other school personnel because "there is not really much [they] can do." D. 57-1 at 30.

        2.    *Record Does Not Show that Harassment Was Because of Sex*

Even if this Court assumes *arguendo* that Plaintiffs had shown that BPS had "actual knowledge" as to any of the incidents, they have failed to support the conclusion that the bullying and incidents that occurred following the sexual assault were sex-based harassment. Hankey v. Town of Concord-Carlisle, 136 F. Supp. 3d 52, 66 (D. Mass. 2015) (stating that, "[i]n the context of a Title IX sexual-harassment claim, 'the plaintiff must always prove that the conduct at issue

was not merely tinged with offensive sexual connotations, but in fact constituted discrimination 'because . . . of sex'") (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75 (1998)). Even accepting that T.K. faced bullying from some of her peers during her eighth-grade year, the undisputed record does not show that this harassment was because of sex.

As to the bullying on social media, although Plaintiffs assert that the bullying T.K. experienced during her eighth-grade year at BPS was sex-based harassment because it directly resulted from the sexual assault by De Santos, they do not identify any factual evidence in the record supporting this conclusion. Plaintiffs also argue that the incidents in which T.K. was slapped by a classmate in the hallway, money was stolen from her bag and another classmate forcibly removed T.K.'s shoes in the cafeteria were sex-based harassment resulting from the sexual assault. See D. 62 at 12-14. The evidence cited by Plaintiffs to support this argument, however, indicates that T.K. stated that she was "not sure" whether these incidents were related to the sexual assault, that she only assumed that they were and that she did not know why these incidents occurred. See D. 62 at 12-14 (citing deposition testimony by T.K.). Plaintiffs' Title IX claim cannot succeed where they have failed to identify evidence indicating that these incidents were related to or resulted from the sexual assault by De Santos. See Thomas v. Town of Chelmsford, 267 F. Supp. 3d 279, 307 (D. Mass. 2017) (noting that "[d]iscrimination on the basis of sex is the sine qua non of a Title IX sexual harassment case" and that, therefore, "the plaintiff must show that the harassment was 'on the basis of sex'"). As such, BPS cannot be held liable under Title IX for sex-based harassment where there is no support in the record beyond mere speculation that the bullying and incidents of harassment were related to the sexual assault and were, thus, based on T.K.'s sex.

        3.     *BPS Was Not Deliberately Indifferent to these Incidents*

Additionally, the undisputed facts do not support the conclusion that BPS responded to the incidents of bullying with deliberate indifference. Deliberate indifference is "a stringent standard of fault" that requires proof that a plaintiff "disregarded a *known or obvious* consequence of his action or inaction." Porto, 488 F.3d at 73 (emphasis in the original) (quotation mark omitted) (quoting Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 410 (1997)).

As to bullying on social media, the context matters. The Supreme Court has stated that a school can be liable for sexual harassment under Title IX where it "exercises substantial control over both the harasser and the context in which the known harassment occurs." Davis, 526 U.S. at 645. BPS cannot be said to have had control over statements that anonymous individuals made on third-party social media sites, particularly where it had no knowledge of the harassment. See Feminist Majority Found. v. Hurley, 911 F.3d 674, 716, (4th Cir. 2018) (concluding that a university could not be held liable under Title IX for alleged harassment that occurred on social media where the funding recipient "did not own or otherwise have a property interest in the online forum where the harassment occurred or the means the harasser used to access that forum"). Further, BPS assigned a chaperone to accompany T.K. between classes. D. 61 ¶ 16. T.K. testified that this measure by BPS ended the harassment she was experiencing from students in school. D. 61 ¶ 17.

The record also indicates that, once notified, BPS took action regarding the other incidents of bullying experienced by T.K. as well. When T.K. reported to Collins that another student slapped her in the hallway, Collins suspended the student for two days and T.K. does not recall being harassed by the student again. D. 61 ¶ 20. Similarly, when T.K. reported to Collins that another student forcibly removed her shoes in the cafeteria, Collins suspended the student and T.K. was not harassed by the student again. D. 61 ¶ 26. Finally, when T.K. reported that someone stole

money and a hat from her at school, Hall investigated, but was unable to determine who was responsible for the theft. D. 61 ¶ 23. These facts are undisputed by Plaintiffs and indicate that, rather than demonstrating deliberate indifference, BPS officials took steps to intervene and stem the instances that T.K. was experiencing once they were notified.

Plaintiffs argue that the measures taken by BPS in response to these incidents were inadequate, arguing that the incidents in which T.K. was slapped and her shoes forcibly removed warranted more discipline than a two-day suspension. D. 61 ¶ 20; D. 62 at 13, 15. However, "a claim that the school system could or should have done more is insufficient to establish deliberate indifference." Porto, 488 F.3d at 73. Rather, "funding recipients are deemed deliberately indifferent to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Porto, 488 F.3d at 74 (quoting Davis, 526 U.S. at 648). Here, as noted before, the record does not support the conclusion that these incidents were sex-based harassment and it cannot be said that BPS did nothing to address the bullying of which it was made aware. Further, there are no facts indicating that the measures taken by BPS to address the bullying were ineffective such that they were required to take additional measures.

Further, as to the sexual assault, although, as discussed above, the record indicates that BPS was unaware of the assault until June 15, 2015 when T.K. no longer attended the school, following the meeting in November 2014 in which another student's parent informed them that T.K. had been engaged in sexual acts on campus, BPS took steps to address the issue. Following the meeting, Collins had T.K. and her family meet with Hall, the school resource officer and a police detective, who counseled them to have T.K. evaluated at Children's Cove and Cape Cod Hospital. D. 61 ¶ 5. Hall also accompanied the family to the meeting at Children's Cove. Id.

Despite lacking knowledge that a sexual assault had occurred, BPS took steps to provide services to T.K. based on the information they had regarding the incident.

The severity and impact of sexual assault cannot be understated and educational institutions have an obligation to their students to respond adequately to reports of sexual assault and harassment. Even bearing this in mind, based on the record here, this Court cannot determine as a matter of law that BPS violated its obligations under Title IX to T.K.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS BPS's motion for summary judgment, D. 54.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
